BIRCH TREE STATE BANK, Appellant, v. W. H. BROWN et al., Respondent.

Springfield Court of Appeals, January 3, 1911.

1. PLEDGE: Collateral Held by Third Party: Purchaser with Notice: Equitable Lien.' In an action by A to establish and foreclose a lien on bank stock, which by agreement was held by C to secure a note signed by B and belonging to A, and which bank stock was purchased by P, the evidence is examined and *held* to show that P purchased with a full knowledge of the lien, and *held*, also, that the agreement between A, B and C was sufficient to create an equitable pledge.

2. ————: ————: Principal and Agent: Payment to Agent. In a suit by A on a note and to establish a lien on bank stock it appeared that the maker of the note, B, had put up his stock, and stock belonging to his mother-in-law, M, with C to secure the notes which he had signed in favor of C and A respectively. M had also signed the note held by C and knew that C held the stock to secure it, but did not know that the stock was being held to secure A's note. This stock was sold by B to P, who having received notice of A's lien, ·retained out of the purchase price an amount equal to A's note, and after C's note was paid, turned the balance over to B. M claimed the amount retained by P as the proceeds from the sale of her stock. The evidence is examined and *held* to establish that A was entitled to the amount retained by P; that M's stock could be used to discharge C's lien because she signed C's note and that B acted as M's agent in the sale of the stock, and that payment to B without notice of limitations on his authority, was equivalent to payment to M.

3. PRINCIPAL AND AGENT: Agent's Authority to Sell: Payment to Agent. An agent who has possession of property belonging to his principal, with authority to sell for cash, ordinarily has authority to collect the proceeds of the sale, and the payment by the purchaser to such agent is payment to·the principal.

Appeal from Greene Circuit Court.—*Hon. James T. Neville,* Judge.

REVERSED AND REMANDED (*with directions*)`.

*Woodruff & Luster* for appellant.

(1) The agreement between Brown and Pate that Brown would buy bank stock with the $1500 and put it up as security for the note was sufficient to create an equitable lien. 31 Cyc. 797; Bispham's Principles of Equity, 470. (2) The agreement between Brown and Coffman that Coffman could hold Brown's stock as security for plaintiff, was sufficient to establish a lien on the stock. Bank v. Trust Co., 135 Mo. App. 366; 31 Cyc. 801. (3) Mrs. Moore's stock was subject to the lien to secure the note held by the Bank of Commerce, and under the doctrine of subrogation or marshalling assets, applying also the maxim that equity regards that done which ought to be done, the stock in Brown's name should be liable primarily to the payment of plaintiff's note. Banking Co. v. See, 130 S. W. 354; 26 Cyc. 931, 934, 937; Bispham's Principles of Equity, 457; Iron Co. v. McDonald, 61 Mo. App. 564. (4) Mrs. Moore permitted Brown to act for her through all these transactions; his knowledge should be imputed to her; his actions should bind her; his pledges of her stock should be considered her pledges. He acted as her agent in the sale of her stock, and having authority to sell, he had authority to receive the purchase price, and his collection of the purchase price of her stock should be held payment to her, even if he afterwards misappropriated the same. Levermore v. Blood, 40 Mo. 48; Chouteau v. Allen, 70 Mo. 290; 31 Cyc. 1368, 1369, 1370; Johnson v. McGruder, 15 Mo. 365.

*Hamlin & Seawell* for respondents, Mrs. W. B. Moore et al.

(1) Subrogation is never allowed where injustice would result, nor as against innocent parties. Bisset v. Grantham, 67 Mo. App. 27; 27 Am. and Eng. Ency. Law, 249. It is only allowed when a party is compelled to pay as surety or in order to protect his own right.

Dunn v. Railroad, 45 Mo. App. 29. (2) If appellant ever had any right of subrogation his equity would be derived through the party to whose rights it asks to be subrogated, and not independently of them. Stone v. Maget, 22 Mo. App. 498; Logan v. Mitchell, 67 Mo. 524; 27 Am. and Eng. Ency Law (2 Ed.), 206. (3) There was absolutely no element of agency existing between Mrs. Moore and Brown in the case. Worthington v. Vette, 77 Mo. App. 448. (4) The record fails to present a state of facts necessary to constitute an estoppel to claim this fund on the part of Mrs. Moore. She owed no duty to appellant. There was no misrepresentations on her part. Appellant was not induced to change its position to its detriment upon any alleged statement, act or conduct upon the part of Mrs. Moore. In fact Mrs. Moore was entirely ignorant of the claim of appellant, and even if she had knowledge of such claim, there was no obligation or duty resting upon her to act either as a guardian or collecting agency for appellant. Blodgett v. Perry, 97 Mo. 263; Shields v. McClure, 75 Mo. App. 631; Spurlock v. Sproule, 72 Mo. 503; Hase v. Schotte, 109 Mo. App. 458.

*Mann, Johnson & Todd* for respondents W. C. Potter et al.

NIXON, P. J.—This suit was commenced in the circuit court of Greene county, the object of which was to establish and foreclose a lien on bank stock in the hands of defendant W. C. Potter which plaintiff claims was put up as collateral to secure the payment of a note of $1500.00 which W. H. Brown, one of the defendants, executed to the plaintiff for money loaned for the purpose of buying bank stock. The suit was tried before the court sitting in equity which rendered a judgment in favor of plaintiff and against Brown on the note, and also found that Potter had notice of plaintiff's claim at the time he purchased the stock hereinafter referred to;

and that plaintiff had a lien on the bank stock, but to the amount of only $62.25, and that Mrs. W. B. Moore, one of the defendants, was entitled to $1437.75 held out of the purchase price. From this judgment, the plaintiff appealed.

Defendant W. H. Brown was a clerk in the Birch Tree State Bank and desired to get a position as cashier in some other bank. He arranged with E. T. Pate, cashier of said bank, for the bank to loan him $1500, with which he was to purchase bank stock, and it was agreed that he would pledge this bank stock to secure the note. The note was made out and signed, but the money was not paid at the time, it being understood that Brown was to draw for the money when he had bought the stock. Brown started out on a prospecting trip and finally located at Fair Grove, Missouri, where he purchased stock in the Bank of Fair Grove. Brown's negotiations with the Bank of Fair Grove resulted in his purchasing considerable more than $1500 worth of stock; in fact, he purchased forty-five and one-half shares of stock in this bank, at the price of $150 a share, making a total investment of $6825. The money for this investment came from the following sources: $3825 from the Bank of Commerce, of Springfield; $1500 from plaintiff bank; and $1500 from Brown's mother-in-law, Mrs. W. B. Moore, one of the defendants. Four shares of this stock were subsequently sold and the $600 received was applied on the note which had been executed to the Bank of Commerce, leaving forty-one and one-half shares. At the time Brown borrowed the $3825 from the Bank of Commerce, he put up with that bank thirty-nine and one-half shares of stock, valued at $5925, to secure this note. Just prior to the time he bought the stock, he drew on the plaintiff bank for the $1500 which that bank was to let him have, but Mr. Pate, cashier of that bank, refused to honor Brown's check because Brown had not put up the stock as collateral. On assurances from Brown that he would send

the stock, Pate honored Brown's check; later Brown admitted that the thirty-nine and one-half shares of stock put up with the Bank of Commerce could also be held to secure his note held by the plaintiff bank. This fact was communicated to Mr. Pate and he made a memorandum on Brown's $1500 note as follows: "Secured by bank stock held by Bank of Commerce, Springfield."

The evidence tended to show that defendant, Mrs. Moore, did not know of Brown's indebtedness to the plaintiff bank, and that she never in any way consented for her stock or her interest in the bank stock of the Bank of Fair Grove to be hypothecated for his debt to that bank (plaintiff) or to the Peoples Bank. That Brown did not disclose to the Bank of Commerce at the time he made his loan and deposited the bank stock as security that $1500 of the money he was using was the money of Mrs. Moore or that she claimed any part of the stock; that afterwards, $600 was paid on the note executed to the Bank of Commerce; that Mrs. Moore, when she ascertained that the stock had been taken in Brown's name, within a reasonable time, considering the circumstances, made complaint, and insisted that the stock he placed in her name, and that by an arrangement with Mrs. Moore and Brown she agreed to take more of the stock than her $1500 would come to at $150 a share; that, with such understanding, she did take twenty and three-fourths shares. After some of the stock was re-issued, we find the stock in question distributed as follows:

*Held by Bank of Commerce*:

14½ shares, W. H. Brown,

19¾ shares, Mrs. W. B. Moore,

5½ shares, Mrs. Bertha Brown.

39½ shares.

*Not Held as Collateral Security:*

1 share, W. H. Brown,

1 share, Mrs. W. B. Moore.

When the arrangement for the new loan was made by the Bank of Commerce, its cashier notified the plaintiff bank of the transaction and told the plaintiff bank there was enough stock in Brown's name to secure said bank. Later, the Bank of Fair Grove was examined by a state bank examiner and Brown was found to be short with the bank about $1000. This resulted in negotiations leading to the purchase of the forty-one and one-half shares of Brown's and Mrs. Moore's stock by defendant, W. C. Potter, the president of the Bank of Fair Grove, and the discharge of Brown as cashier. Potter paid $147 a share for said stock, making a total of $6100.50. Of this purchase price, $3200 was paid to the Bank of Commerce, leaving a balance of $2900.50. Of this balance, $1500 was retained by defendant Potter, and the remainder, $1400.50, was paid over to Brown, who stated that he paid it to the Peoples Bank of Springfield, from which he had borrowed $1500.

The note sued on is as follows:

"$1500.00                BIRCH TREE, Mo., April 19, 1909.

"One day after date, for value received, I promise to pay to the order of the Birch Tree State Bank, at the Birch Tree State Bank, the sum of Fifteen Hundred Dollars, with interest from maturity at the rate of eight per cent per annum, payable annually; and if the interest be not paid annually or when due, to be added to and become a part of the principal and bear the same rate of interest. . . .

"W. H. BROWN.

"No. 2052.   P. O. Fair Grove.

"Secured by bank stock held by Bank of Commerce, Springfield."

Endorsed on back: "Int. paid to Feb. 16, '10. $100.00."

From the foregoing statement of facts developed at the trial, it will be seen that the vital and controlling evidence that determines the rights of the parties is practically uncontradicted. It appears from this evidence that sometime prior to June, 1909, the defendant, W. H. Brown, son-in-law of the defendant, Mrs. W. B. Moore, had borrowed from the Bank of Commerce of Springfield, Missouri, the sum of $3825. for which he had executed his note, and, to secure its payment, deposited as collateral forty-one and one-half shares of stock of the Bank of Fair Grove, valued at the sum of $6225. That this stock had been issued as follows: Thirty-four shares to W. H. Brown; five and one-half shares to Mrs. Bertha Brown, his wife; and two shares held by W. H. Brown, but not deposited as collateral security. That such stock had, on the application of Brown, been issued in his name and delivered to him and by him deposited as such collateral security. That Mrs. Bertha Brown, wife of W. H. Brown, knew nothing of the transaction and had none of her money invested in the stock issued in her name. Of this stock, twenty and one-half shares had been purchased with the money of Mrs. W. B. Moore, which had been issued and delivered by the Bank of Fair Grove in the names of W. H. Brown and Mrs. Bertha Brown without the knowledge of Mrs. Moore, and Brown had borrowed the money of the Bank of Commerce and made the deposit of her stock also without her knowledge or consent; but Mrs. Moore subsequently learned that the stock had been issued in Brown's name and by him deposited as collateral security with the Bank of Commerce to secure his note. She thereupon demanded that her stock should be reissued in her name, and, on application of Brown in her behalf, the old stock was surrendered and new stock issued by the Bank of Fair Grove in its place, as follows: Fifteen and one-fourth shares to W. H. Brown; five and one-half shares to Mrs. Bertha Brown; twenty and three-fourths shares to Mrs. W. B. Moore.

A new arrangment was entered into with the Bank of Commerce by which a new note was executed by Brown and Mrs. Moore for the sum of $3225. and Brown's old note was surrendered. To secure this new note, the entire stock, as reissued, was deposited as collateral security, except two shares, one to W. H. Brown and one to Mrs. W. B. Moore.

The evidence further tended to show that the plaintiff bank, prior to this time, had been claiming a lien, to secure its note, on all the stock originally deposited with the Bank of Commerce. After the new deal had been made and the new note executed to the Bank of Commerce, its cashier notified the plaintiff bank of the arrangement it had made, and an agreement was entered into between Brown and the plaintiff bank to the effect that his stock which he had deposited with the Bank of Commerce should be held by such bank to secure his note to the plaintiff bank, subject to the first claim of the Bank of Commerce to secure its loan, and the cashier of the plaintiff bank made an endorsement on the note of Brown held by it to the effect that the stock held by the Bank of Commerce was security for its payment. The evidence also tended to show that Mrs. Moore had no knowledge of the indebtedness of Brown to the plaintiff bank or of any agreement that his stock should be security for such loan. Subsequently, Brown, becoming involved, entered into negotiations with W. C. Potter, the president of the Bank of Fair Grove, for the sale of the forty-one and one-half shares of stock which was deposited with the Bank of Commerce, and before the trade was consummated, Potter received notice that the plaintiff bank held a lien on the stock to secure its $1500 note, and, in order to secure this claim and protect himself, Potter entered into an arrangement with Brown by which $1500 of the purchase price of the stock should be held by the defendant, J. W. B. Appleby, until the plaintiff's lien on the stock should be determined, and Potter purchased the

stock subject to this arrangement, paying $147 a share, making a total sum of $6100.50. Of this purchase price, $3200 was paid to reimburse the Bank of Commerce for its loan, leaving a balance of $2900.50. Of this balance, $1500 was retained by Appleby, and the remaining $1400.50 was paid over to Brown, who stated that he paid it to the Peoples Bank, of Springfield from which he had borrowed $1500. The evidence further shows that the negotiations and sale of this stock to the defendant Potter was made with the knowledge and consent of Mrs. Moore. She testified that she heard the testimony of Potter as to the trade he. had made for the stock. "Q. Did your son-in-law confer with you about what you were offered for the stock? A. Yes. Q. And as a matter of fact he did the talking with Mr. Potter? A. Oh, yes; he did at the time; I wasn't able to get out." W. H. Brown testified in regard to the sale of the stock to Potter: "Q. You sold this bank stock, you and her, out there to Mr. Potter? A. Yes, sir. Q. For how much? A. Well, I think it was something like $6100; I think $147 a share." Defendant Potter testified in regard to what was said by Brown at the time of the sale of the stock: "Q. What did Brown say to you about it? What claim did he make? A. He said that Mrs. Moore's name wasn't in the note of the Birch Tree State Bank at all; that her stock wasn't up for that. Q. That her stock was up for the Bank of Commerce loan? A. He said that her name wasn't on that note, and he claimed that as Mrs. Moore's stock. Q. Did he claim any more of it belonged to Mrs. Moore than the $1500? A. No, sir; $1500 is all he claimed. Q. Did Mrs. Moore ever see you and make any claim? A. I never saw Mrs. Moore to talk to her during the time. I haven't seen her since this come up until today."

Under the uncontradicted evidence, at the time the stock was on deposit in the Bank of Commerce, Brown agreed with the plaintiff bank that his stock deposit-

ed with the Bank of Commerce, subject to its primary liability to such bank for its loan, should be held as security for the payment of the plaintiff's note. The defendant Potter, having purchased the stock with full knowledge of this agreement, the possession of the stock passed from the Bank of Commerce into his hands impressed with a lien in favor of the plaintiff to the amount of its note. The contract created an equitable pledge which a court of equity will enforce. [31 Cyc. 801; Id. 797; Grand Avenue Bank v. St. Louis Union Trust Co., 135 Mo. App. 366, 115 S. W. 1071.] The plaintiff is not shown to have done anything to discharge or invalidate in any way this lien thus created by the parties, and it necessarily follows that the plaintiff at the time of the commencement of this suit was unquestionably entitled to have judgment that its lien against such stock be enforced.

But the issue of paramount importance is raised by the facts in this case and is as to the claim of Mrs. Moore to the $1500 left in Potter's hands which he deposited with Appleby as stakeholder to abide this litigation. The entire purchase price of the stock was $6100.50. The defendant Potter paid $3200 of this to the Bank of Commerce, deposited $1500 with Appleby, and paid the balance, $1400.50 to Brown who paid it to the Peoples Bank, of Springfield, as a credit on the loan he had made with that bank. So that if it should now be held that the defendant Potter should pay the sum of $1500 held by said Appleby, it would result in a loss to him of that sum of money in excess of the purchase price which he was to pay for the stock. The evidence clearly establishes the fact that Mrs. Moore authorized her son-in-law, Brown, as her agent, to sell her bank stock to Potter, and necessarily authorized him to take possession of the stock and deliver it to the purchaser and out of the proceeds to pay her note of $3225 executed to the Bank of Commerce, which such agent proceeded to accomplish. An agent who has possession of

property belonging to his principal with authority to sell, under the circumstances shown in the evidence in this case, had the implied authority to collect the proceeds of the sale; and the payment by the purchaser to such agent, without notice of limitation on the agent's authority, is payment to the principal. [Bailey v. Pardridge, 27 N. E. 89; Ulrich v. McCormick, 66 Ind. 243.] The general rule is that where the principal has clothed the agent with the indicia of authority to receive payment, as by entrusting him with the possession of the goods to be sold, the purchaser is warranted in paying the price to the agent at the time of the sale. [1 Am. and Eng. Ency. Law, 1014: Mann v. Robinson, 42 Am. Rep. 771; Hackney v. Jones, 3 Humph. (Tenn.) 612; Rice v. Groffmann, 56 Mo. 434; Lumley v. Corbett, 18 Cal. 494; Capel v. Thornton, 3 C. & P. 353; Pickering v. Busk, 15 East 38.] Mrs. Moore, having signed the $3225 note, as maker, she put up her stock to secure this note. Under the law, she and her stock could be held for the full payment of the note. Under the authorities cited, the payment of the $1400.50 to Brown was a payment to Mrs. Moore. From the evidence it is apparent that Mrs. Moore had entrusted her son-in-law, Brown, largely with the management of her business in the transactions under investigation. She let Brown have the money to buy the stock for her in her name. She made him her agent to buy this stock, and put it up as security for a loan, but complained that it was not issued in her name. Later on, she made Brown her agent to obtain this stock from the Bank of Commerce and have it reissued in her name, and Brown, being her agent, his knowledge and information concerning the stock must be imputed to her. Notwithstanding the violation of trust on the part of Brown in having procured the stock originally to be issued in his name, we find that after this he was still acting as her agent in the sale of stock. Brown alone negotiated the sale to Potter, and Mrs. Moore never appeared on the scene

or took any personal part in the transaction. She still continued to hold him out as her agent, and Potter dealt with Brown as her agent in the purchase of the stock, and every act of Brown—in the sale of the stock, the price for which it was sold, and the entire transaction as to the terms and conditions of the sale were acquiesced in by her. Under these circumstances, Brown was clothed with the indicia of authority to receive payment upon the sale of the stock, and, in law, the payment of the $1400.50 in cash to him was payment to Mrs. Moore. Although she has undoubtedly been the victim of misplaced confidence, having clothed Brown with authority to act for her because she had faith in the integrity of her daughter's husband, the defendant Potter, acting in good faith in his transactions with Brown as her agent, ought not to be held responsible or suffer the consequences in equity for the misconduct of her agent.

We find that the plaintiff agreed in the trial court not to make any claim of lien on the bank stock for attorneys' fees or interest; we find also that W. H. Brown was indebted to the plaintiff on the note sued on in the sum of $1500, and that the plaintiff is entitled to a lien on the bank stock of the Bank of Fair Grove—formerly held by the Bank of Commerce, of Springfield, as collateral security, which was purchased by the defendant, W. C. Potter—to the amount of $1500, and is entitled to the $1500 fund held by the defendant, J. W. B. Appleby, and that the defendants, Mrs. W. B. Moore and Mrs. Bertha Brown, are not entitled to any portion of such fund. The defendants, the Bank of Fair Grove, J. W. B. Appleby and W. C. Potter are required to deliver into the circuit court the $1500 fund retained by the said Appleby out of the proceeds of the purchase price of the stock, which fund shall be paid to the plaintiff in full satisfaction of its lien on the stock. The defendants, W. C. Potter, J. W. B. Appleby and the Bank of Fair Grove, shall not be charged with any interest, costs or attorneys' fees by reasons of this litiga-

tion, but the remaining defendants shall pay the costs of this litigation. It is ordered that this decree be certified to the circuit court of Greene county, and that such court enter judgment in accordance with its provisions. All concur.