JOHN G. PICKETT and R. G. SEXTON, Plaintiffs, v. SCHOOL DISTRICT OF KANSAS CITY, Defendant; THE KANSAS CITY SOUTHERN RAILWAY COMPANY, Interpleader, Appellant; THE STERNBERG COAL & MINING COMPANY, Interpleader, Respondent.

Kansas City Court of Appeals, May 22, 1916.

1. **EQUITY: Contracts: Partial and Entire Assignments: Priorities.** The B. Coal Company, under contract, furnished coal in carload lots to the School District. The coal was mined and sold to the B. Company by the S. Coal Company, and the K. Railroad hauled it to the district. The refusal of the latter to pay for the coal left the B. Company unable to pay the freight charges to the railroad or the purchase price of the coal to the S. Coal Company. The railroad obtained from the B. Company a partial assignment of its claim against the district to secure the freight charges. The B. Company brought suit against the district for the coal. The district set up a counterclaim. The S. Company then secured an assignment of the entire claim against the district, without notice of the former partial assignment to the railroad, and asked to be substituted as plaintiff in the case against the School District. The substitution was not made but the case was continued in

the name of the B. Company for the S. Company's benefit. Judgment was obtained against the district and it was about to be paid when the railroad filed an intervening petition asking that its partial assignment be established as a prior claim. *Held*, that the S. Coal Company's legal and equitable rights were superior to the equitable rights of the railroad.

2. ———: ———: ———. The partial assignment of an account, without the consent of the debtor, is without sufficient validity to enable the assignee to call in question a subsequent assignment of the whole claim, nor does it prevent the assignor from afterwards assigning the whole claim. And the rule in this State is the same in equity and at law.

3. ———: ———: ———. Even if, in some circumstances, courts of equity will enforce rights acquired under partial assignments, they will not enforce them unless they can do so without working a hardship upon the debtor. *A fortiori* they will not enforce them against the equities of a subsequent assignee without notice, who has obtained the whole title.

4. ———: ———: ———. At the time of the assignments there was no equity suit. The S. Company obtained the legal title and would have been entitled to the judgment without resort to equity. No equity suit would have arisen had not the railroad company filed its intervening petition based upon its equitable assignment. In addition to its legal rights, the S. Company had equitable rights fully as strong, if not stronger, than the railroad since it helped secure the judgment and did all in its power to take possession of the *res*, without notice of any prior assignment.

Appeal from Jackson Circuit Court.—*Hon. Jos. A. Guthrie*, Judge.

AFFIRMED.

*S. R. Freet, M. M. Bogie* and *E. H. McVey* for Pickett & Sexton and Coal Co.

*Gage, Ladd & Small* for School District.

*Lathrop, Morrow, For & Moore* for Railroad Co.

TRIMBLE, J.—The plaintiffs, Pickett & Sexton, doing business under the name of The Best Coal Com-

pany, furnished, under contract, a large amount of coal in carload lots to the Kansas City School District. The coal was mined by the Sternberg Coal & Mining Company which sold it to the Best Coal Company for delivery to said School District. The coal was transported to Kansas City by the Kansas City Southern Railway Company and the freight thereon amounted to $490.29. A controversy over the coal arose between the School Board and the Best Coal Company and the board refused to pay. This left the Best Coal Company owing the railroad the freight above mentioned and also owing the Sternberg Coal & Mining Company the sum of $2981.98 for the coal.

The Best Coal Company became wholly unable to pay either claim, and, on February 7, 1914, it executed and delivered to the Railway Company a written assignment reciting the delivery of certain carload shipments of coal to the district amounting to "more than $4000;" that the Railway Company had hauled the coal; that the Best Coal Company has "agreed that as security to said Railway Company for the payment of said charges it will assign a sufficient portion of said debt to pay the claim of the Railway Company" therefore, the Best Coal Company, for $1 and other valuable considerations, assigned to said Railway Company "any and all sum or sums of money now due or to become due to the Best Coal Company from the School District of Kansas City to the amount of four hundred and ninety dollars and twenty-nine cents ($490.29)."

The Railway Company presented the assignment to the School Board but it refused to accept or consent to the assignment, as it was denying all liability on the Best Company's claim.

Thereafter, on February 17, 1914, plaintiffs, Pickett & Sexton, or the Best Coal Company (being one and the same), brought suit against the School Board

for $5300 for coal furnished. The School Board filed
a general denial together with a counterclaim for
$3766.96 on account of short weights.

On October 9, 1914, plaintiffs, Pickett & Sexton,
executed and delivered to the Sternberg Coal & Min-
ing Company a written assignment of all interest in
the account sued on in the case against the School
Board, to secure to the Sternberg Company payment
of the said sum of $2981.98 with interest from April
1, 1914, being the amount of money owed for coal sold
to the district, "with full authority to proceed to the
collection of said account in such manner as may
seem best to the said Sternberg Coal & Mining Com-
pany. Compromise of said case shall not be made
without the approval of the said John G. Pickett and
R. J. Sexton. When the account is paid, any surplus
over and above the amount of the bill recited shall be
paid to John G. Pickett and R. J. Sexton, assignors."

Immediately upon obtaining this assignment, the
Sternberg Coal & Mining Company filed a motion in
the suit against the School Board to be substituted as
party plaintiffs in the place of Pickett & Sexton and
also a motion for the appointment of a referee. The
motion to be substituted as plaintiffs does not seem
to have been formally acted upon. Section 1924, Re-
vised Statutes 1909, provides that the court may allow
the substitution to be made, or the action may be
continued in the name of the original party if the
transferee will indemnify him against costs. If no
application for indemnity is made by the party mak-
ing the assignment, it is regarded as waived. [Asher
v. St. Louis etc. R. Co., 89 Mo. 116.] The trial court
appears to have regarded the substitution unnecessary
under the statute since the plaintiffs were willing for
the case to continue as it was. At any rate the case
continued on in the name of Pickett & Sexton as plain-
tiffs, but a referee was appointed as prayed for by

the Sternberg Coal & Mining Company in its motion to that effect. The case was thereafter conducted by the attorney for plaintiffs who had brought the suit and by the attorney who had appeared for the Sternberg Coal & Mining Company and filed the motions to be substituted as plaintiffs and for a referee. At the beginning of the hearing before the referee, the assignment to the Sternberg Coal & Mining Company was offered in evidence, and the offer was objected to by the School Board, whereupon, the attorney for plaintiffs remarked, in substance, that it did not concern the defendant as it was a matter between the plaintiffs and the Sternberg Coal & Mining Company only, the assignment having been made by the plaintiff to the Sternberg Company, and if any judgment was obtained it would really belong to the latter. During the course of the hearing the School Board introduced in evidence the assignment made by plaintiffs to the Railway Company. The evidence shows that, up until this time, the Sternberg Coal & Mining Company had had no notice whatever of this assignment.

On January 29, 1915, the referee made his report finding for plaintiffs, on the account sued on, in the sum of $4472.78 and for defendant, on its counterclaim, in the sum of $1214.09, being a net finding for plaintiffs in the sum of $3258.69. This report was confirmed by the court on February 13, 1915, and judgment was rendered thereon, which, with interest, amounted to $3454.21.

The School Board being about to pay over the amount of the judgment, the Kansas City Southern Railway Company brought an injunction suit seeking to have the claim under its assignment enforced out of the amount due from the School Board and to have said claim declared, in equity, to be prior and superior to the claim of the Sternberg Coal & Mining Company. Thereupon the School Board paid the money

into court in the case wherein the judgment against it had been rendered, and was discharged from all further liability.

On February 20, 1915, the Sternberg Coal & Mining Company filed its motion, or petition, duly verified, in which it set up the facts with reference to the furnishing of the coal, and the agreement with plaintiffs as to the amount thereof, whereby the account became an account stated; that plaintiffs advised them of the suit pending against the School Board and promised that all moneys obtained as a result of the suit would be paid to said Company to the extent necessary to settle said debt; that in consideration of this agreement the Sternberg Company extended further time and credit to the plaintiffs; that on October 9, 1914, the assignment to the Sternberg Company was made "with full authority to proceed with the collection of said account in such manner as may seem best to the said Sternberg Coal & Mining Company;" that the said Company thereupon appeared in said suit against the School Board, the plaintiffs also appearing and agreeing in open court that the said suit should be prosecuted in the name of the plaintiffs for the use and benefit of the Sternberg Coal & Mining Company; that thereafter the Sternberg Company prosecuted the same for their own use and benefit and made proof thereof in that case before the referee; that the Sternberg Company had no knowledge of any assignment of a part of said claim to the Railway Company but took their own assignment in good faith and without notice of any claims or liens of any kind or character. And said motion prayed that the Sternberg Company's claim be established in the sum of $2981.98 with interest from April 1, 1914, and that said sum, with $250 attorneys fees, be paid to it by the clerk.

The injunction suit brought by the Railway Company had been assigned to the same Division that

tried the case against the School Board, and the court suggested that the Railway Company dismiss its injunction suit and file an intervening petition in the suit wherein the judgment had been obtained ad the money paid. Thereupon, on February 24, 1915, this was done, and the Railway Company filed its intervening petition, based upon its assignment, and asked for the allowance of its claim of $490.25.

It seems that, before the hearing on the motions, $100 was allowed plaintiffs' attorney, by consent of all parties, and that then the court ordered $2500 to be paid over to the Sternberg Coal & Mining Company leaving $854.21 to be litigated over.

The court afterwards, sitting as a chancellor, heard the motions and the evidence in support thereof, and found the issues for the Sternberg Coal & Mining Company and against the Railway Company and the plaintiffs. The court directed that, out of the fund .on deposit, the costs of the hearing on the motions be first paid; that then the Sternberg Coal & Mining Company be paid the full amount of its claim, which with interest, amounted to $3165.83 less the sum of $2500 already paid, making the balance to be paid $665.83, and that what was left be paid to the attorney for the Sternberg Coal & Mining Company as a fee claimed as a charge and lien against the fund.

Plaintiffs and the Railway Company appealed, but, as we understand it, only the appeal of the latter is now prosecuted or necessary to be considered.

We think the court was right in ordering the Sternberg Coal & Mining Company's claim to be paid in full notwithstanding the fact that the Railway Company's partial assignment was prior in point of time to that of the Sternberg Coal & Mining Company. There is no doubt but that the Railway Company's assignment was partial only and that the School Board did not consent to the assignment, while the

assignment to the Sternberg Company was of the entire account and passed the legal title thereto with full power to sue on and recover same. It is well settled that the partial assignment of an account, without the consent of the debtor, is without sufficient validity to enable the assignee to call in question a subsequent assignment of the whole claim, nor does it prevent the assignor from afterwards assigning the whole claim. [Burnett v. Crandall, 63 Mo. 410; Neardley v. Morgner, 73 Mo. 25; Loomis v. Robinson, 76 Mo. 488; Turner v. Lord, 92 Mo. 113, l. c. 117; Wabash Railroad Company v. Bowing, 103 Mo. App. 158, l. c. 171.] But, says the Railway Company, the reason of this is that it is unjust to the debtor to allow claims against him to be split and thereby compel him to deal with several creditors instead of one, and that reason does not exist in this case since the debtor, the School District, is in no danger of being subjected to the various demands of a split claim as it has paid the debt into court and is no longer concerned about the matter. It is further contended that equity will enforce such partial assignment. It may be remarked that in this State it is held that the same rule applies also in equity. [Burnett v. Crandall, 63 Mo. 410; Bland v. Robinson, 148 Mo. App. 164, l. c. 169; Missouri Pacific Ry. Co. v. Wright, 38 Mo. App. 141.] It should also be observed that even if, in some circumstances, courts of equity will enforce rights acquired under partial assignments, they will not enforce them unless then can do so "without working a hardship upon the debtor." [4 Cyc. 29.] *A fortiori,* they will not enforce such partial assignments to the hardship or against the rights and equities of a subsequent assignee who has obtained the whole title.

It seems to us, however, that there was no suit in equity until the Railway Company filed its motion or intervening petition and that while its claim rested

upon an equitable assignment, yet the Sternberg Coal & Mining Company did not have to resort to equity to obtain its claim. It had obtained the legal title to the debt under its assignment, and, in the suit in which the judgment was secured against the School Board, could, by virtue of section 1924, have obtained the proceeds of the judgment without resort to equity in any way. And nothing in the way of an equity suit would have arisen had it not been for the Railway Company's resort thereto to obtain payment of its claim. In addition to its legal rights, the Sternberg Coal & Mining Company had equities fully as strong if not stronger than the Railway Company, since it not only produced the coal but it went farther, and after getting an assignment of the entire claim without notice of any partial assignment to the Railway Company, it expended money and effort to establish and collect the debt assigned. In fact, it did all in its power to take possession of the *res* and the court's failure to substitute the company as plaintiff was all that prevented it from being in full and complete *legal* possession and right to the judgment. And it is conceded that the Railway Company did nothing, and took no part whatever, in the litigation against the School Board, nor did it make any move until the board was about to pay over the money. Then it filed an intervening petition or motion asserting an equitable claim and the parties consented that the matter could be heard by the court in equity. The Sternberg Company was asserting its right to the judgment and, on its motion, would have obtained it as a matter of legal right had it not been for the intervention of the Railway Company upon its equitable claim. The evidence shows that the Sternberg Company's right to the fund could be sustained on legal as well as equitable grounds, and, therefore, the court did not err in awarding to it payment in full of its claim.

There may be a further question as to whether the court erred in ordering the remainder of the fund, after the payment of the Stenberg Company's claim and the costs created in the hearing on the motions, to be paid to the attorney for the Sternberg Company, to apply on his fee of $250 which the court found was a reasonable fee for services rendered in said hearing. But, as appellant presents nothing on this feature of the case, and the other side treats it as abandoned, we can assume that this question is no longer insisted upon. It may be there was little or nothing left to be paid the attorney after the payment of costs (the amount of which is not shown). However, if the question is still insisted upon, we may remark that we see no reason why the court, sitting as a chancellor, could not allow an attorney's fee in the matter payable out of the fund. Of course, the Sternberg Company could not be allowed an attorney's fee for merely filing the motion to have the judgment paid to it since it was merely an additional step taken in a suit at law, and, ordinarily, attorney fees are not allowed therein. But, in this case, the Railway Company, by filing its intervening petition, in effect, brought an equity suit to obtain payment out of the fund, or, at any rate, by consent of all parties, it was treated as a matter in equity. The Sternberg Company was, therefore, compelled to defend, in equity, the fund from the assault made thereon by the Railway Company, and succeeded in said defense. We have always understood that it was in the power of courts of equity to allow attorneys' fees, especially to the side which has been successful.

We are of the opinion that the judgment should be affirmed in all respects. It is so ordered. All concur.