M. B. MURRY ET AL., RESPONDENTS, v. CENTRAL BANK, APPELLANT. —40 S. W. (2d) 721.

Kansas City Court of Appeals. June 15, 1931.

*Harris, Price & Alexander* for respondents.

*George S. Starrett* and *Ruby M. Hulen* for appellant.

ARNOLD, J.—This is an action seeking to recover money collected by defendant on a note which plaintiffs claim was collected for their use and benefit by reason of an assignment or transfer of the note. The cause was tried to the court and jury. At the close of the case the court instructed the jury to return a verdict for plaintiffs in in the amount prayed for in their petition, namely $1125, as principal and interest, and the further sum of $112.56 as attorney's fees, upon which a judgment was accordingly entered. After an unsuccessful motion for a new trial, defendant duly appealed.

The record discloses one Joseph D. Chorlton and wife were the owners of certain real estate in Columbia, Missouri, which they sold and conveyed subject to a first deed of trust thereon, to one Pittman. They received from him as part of the purchase price, his note in the sum of $5894.26, dated July 19, 1924. This note, secured by a second deed of trust on said property, was payable in monthly in-

stallments of $50 each, with the provision that the balance remaining thereon should be due and payable August 1, 1927.

On July 28, 1924, said Chorltons became indebted to defendant bank in the sum of $2950.84, for which they executed their note, and as collateral security, endorsed, assigned, and delivered to defendant said Pittman note. While said Pittman note was held by the bank as aforesaid, the Chorltons became indebted to plaintiff, M. B. Murry, and his brother, Thomas F. Murry (now deceased, his interest being represented in this action as co-party plaintiff by W. E. Davis, the administrator of his estate), for rent of a residence owned by them. Relative to such indebtedness, it appears said parties entered into a written agreement, as follows:

"This contract made and entered into this 21st day of September, 1925, by and between Thos. F. Murry of Oklahoma City, Oklahoma, and M. B. Murry of Callaway county, Missouri, parties of the first part and Joseph Chorlton and Bonnie B. Chorlton, of Columbia, Missouri, parties of the second part, witnesseth:

"That whereas the said parties of the second part are indebted to the said first parties, for certain rents on property located at Number Six (6) Ripley Street, Columbia, Missouri, and are unable to pay said rents in cash when due the said second parties have agreed to give the first party a note for said rents, said note to bear interest at the rate of eight per cent from date and they agree to secure the said note by giving as collateral a note for the sum of $5894.26 given by M. D. Pittman and wife to the said parties of the second part and bearing date of July, 1924. It is understood, however, that the said note of $5894.26 is now held by the Central Bank of Columbia, Missouri, to secure the payment of a note given by said second parties to the said Bank for the sum of $2950 of date July 28, 1924. It is also further understood that $700 has been paid on each of the two notes above described. It is understood that the rents secured are rents due on a contract which extends from August 15, 1924, to August 15, 1925."

This agreement, although dated September 21, 1925, was actually entered into on October 17, 1925, at which time the Chorltons also executed and delivered to plaintiff, for all rent then due, their note in the sum of $763.97 and interest at eight per cent. This note was payable one day after date, and provided that if same was not paid at maturity and placed in the hands of an attorney for collection, an attorney's fee of ten per cent on principal and interest should be paid. Nothing was ever paid by the Chorltons upon this note.

It is conceded of record that prior to the maturity of the Pittman note on August 1, 1927, the defendant had collected thereon $1950, of which amount $1709 had been credited upon the Chorlton note of $2950 and $241, upon two other notes of the Chorltons, held

by the bank; that Pittman was unable to pay the balance of his said note at its maturity; that it was arranged between him, the Chorltons and the defendant bank that he should refinance his property by getting a larger first mortgage loan, appropriating the excess received to the payment of the pledged second mortgage note held by the defendant, which was done; that in the refinancing program the said Pittman note was cancelled and the deed of trust securing the same released of record; that a new note for $3200, payable to the Charltons, and a second deed of trust securing the same were then executed by Pittman and delivered to defendant; that later, on October 29, 1927, the Chorltons borrowed $1600 from defendant bank and as collateral security endorsed and assigned this new Pittman note in the sum of $3200; that Pittman made regular monthly payments to November 14, 1928, upon said new note, which totaled $750; that these payments were applied on said $1600 note of the Chorltons; that on said later date the bank purchased the said Pittman note, paying therefor, $400 in cash to the Chorltons, and by satisfying the balance due upon the $1600 note and other of Chorltons' obligations.

Plaintiff's evidence tended to prove that the bank was notified and advised of plaintiffs' claim prior to August, 1927. This is disputed by defendant. However, it is admitted of record by defendant's officers, who testified on its behalf, that prior to October 29, 1927, at which time it made the new loan of $1600 to the Chorltons and accepted the Pittman note of $3200 as collateral security therefor, the bank had full notice and knowledge of plaintiffs' claim. Subsequent to this notice on November 14, 1928, it made said purchase of the unpaid balance of the Pittman note. It was formally admitted of record by defendant's counsel that at the time of said purchase by defendant, it had collected on the Pittman note enough to pay the $2950 and interest (the original Chorlton indebtedness) and $1486.36 in addition thereto.

Plaintiffs' amended petition alleges the corporate existence of defendant, the execution of the original Pittman note, the pledge thereof to the bank, the making of the agreement set out above, the execution of the note to the Murrys thereunder, the fact of nonpayment, the alleged assignment by the agreement of the pledged note as collateral security therefor; the notice thereof to the defendant, the collection by defendant of sums in excess of the amounts due from the Chorltons, and that the defendant had received over its own claims, for the use and benefit of plaintiffs, a sum there set out, more than sufficient to pay plaintiffs' demands. By its answer to said petition, so far as here pertinent, defendant denied the notice of assignment to the Murrys, and the legal force and effect of the Murry agreement as an assignment. The answer further alleges

as a defense, the making of certain advances on the Pittman note, and the fact of purchase on November 14, 1928, of the new $3200 note. The reply, in substance, reasserts the legal sufficiency of the assignment, but also alleges that if insufficient to pass the legal title, still it operated to create a lien upon the $3200 note which represented the balance of the original Pittman note. Such reply also charges that the bank made all of its advances and payments therefor with full knowledge of plaintiffs' rights and subject thereto.

The trial court, in directing a verdict for the plaintiffs, stated he was prompted to do so by reason of the fact the bank admitted having received notice of plaintiffs' claim, at a time when the indebtedness for which the Pittman note had originally been pledged had been discharged, and at a time when it held the $3200 note free of any claim of its own. Hence, the bank, in dealing further with respect thereto with full knowledge of plaintiffs' claim, became liable therefor.

Since the material facts are undisputed, as we view the cause, the propositions presented are not difficult of determination. The defendant bank held in its possession a note for $3200, evidencing the balance due on a previous note for $5894.26, which had been cancelled to allow refinancing. This $3200 note was given and accepted by defendant as a renewal representing the balance due on the cancelled note. After such new note was given, notice was given to the bank that plaintiffs claimed certain rights therein as security for the payment of their debt. At that time defendant bank had no rights in, or lien against the $3200 note,—all of its claims having been paid by the refinancing program. No question is raised as to the sufficiency of this notice, and none could be raised. The right asserted by plaintiffs was that the Pittman note had been ''given'' to them as collateral security for another note executed to the Murrys. With this notice, and fully cognizant of the outstanding adverse claim of plaintiffs, the bank thereafter loaned money and took said note as collateral security, collected money thereon, repaid its advance, and finally purchased the unpaid balance thereof.

The precise question here involved is whether this money collected and derived on account of the aforesaid note does not, in equity and good conscience, belong to the plaintiffs, of whose rights defendant had full knowledge when it acted as stated. Obviously, it is liable if the record discloses the plaintiffs have proved the existence, validity, sufficiency and priority of the claim which defendant's notice encompassed, for after notice, defendant was not entitled to be treated as a *bona fide* purchaser. [Greenlee v. Marquis, 49 Mo. App. 290; Birch Tree State Bank v. Brown, 133 S. W. 860, 152 Mo. App. 589, 49 C. J. 929, sec. 67.] Plaintiffs met this burden by proving a written contract between the Murrys and Joseph Chorl-

ton and wife which recited that the Chorltons "have agreed to give the first parties a note" and "they agreed to secure the said note by giving as collateral security" the Pittman note. It appears that the note to be given by the Chorltons was executed and delivered concurrently with the signing of the agreement. Defendant contends the language quoted above was not sufficient to transfer or assign the Pittman note *in praesenti*, but amounted simply to an agreement to do so at some future unfixed date, arguing that the future date inferable from the agreement was the date of the pledged note's discharge as collateral to the bank.

If we were to adopt defendant's view that the agreement between the Murrys and Chorltons was not a present, concurrent transfer or giving of the note in question and that it was not self-executing, but was only an agreement to transfer, give or pledge in the future, it would not aid defendant's contention. It would simply result in plaintiffs' position being that instead of their having forthwith, upon the execution of the agreement or upon the giving of the agreed rent note to the Murrys, a legal lien or security, they (the Murrys) acquired a right to such a lien or security. They then would have an equitable lien or security. ['Bank v. Brown, 133 S. W. 860, 152 Mo. App. 589; Sanguienett v. Webster, 54 S. W. 563, 153 Mo. 343, l. c. 370; Glassbrenner v. Morgan, 296 S. W. 201, l. c. 202.] Defendant, while conceding that "an agreement to *pledge* as collateral security" was shown, urges that in this action no recovery can be predicated thereon, asserting such a recovery could not come within the issues made by the pleadings.

Plaintiffs' amended petition counted on the written instrument heretofore set out, alleging that thereby the Chorltons did "transfer and assign to plaintiffs, as collateral security, said Pittman note;" that defendants had due notice thereof; that the bank collected funds thereon in excess of its legal claim, and therefore "the defendant has had and received for the uses and benefit of these plaintiffs" a sum in excess of the amount due plaintiffs. The answer denied notice and the legal sufficiency of the assignment. It then set up the pledge of the bank, the execution of the new note for $3200, the payments thereon, and the purchase thereof by defendant. The reply alleged that if the agreement was insufficient to pass the legal title, such agreement operated to create a lien. It also charged that the renewal note was a continuation of the original Pittman note which, it is stated, defendant accepted and held with full notice of plaintiffs' claim. Other matters are set up by way of estoppel and otherwise, which need not here be set forth.

It is apparent from the foregoing that plaintiffs pleaded the agreement and its effect either to transfer and assign, or to create a lien. There was no departure in the reply. It is the written agree-

ment which was at all times counted on in both the amended petition and the reply. The pleaders' statement that it was a present transfer or their conclusion that if it was not, it created a lien, is unimportant, for the pleadings sufficiently allege, in general terms, the facts making up the transfer and the asserted lien. Plaintiffs specifically set out the agreement and declared on it—whatever it might in law be deemed. We therefore hold against the defendant's contention that the recovery was on a different cause of action from that pleaded. We rule also that the pleadings were sufficiently comprehensive to support recovery on the theory of an equitable transfer or lien, especially after judgment.

Tersely stated, this action is one for money had and received. The facts and circumstances, from which are implied the promise and duty to pay the money, and the cause of action predicated are sufficiently pleaded. Recovery can be had in an action on an equitable lien. While it is true that such an action, strictly speaking, is an action at law (Holland Land & Loan Co. v. Holland, 298 S. W. 39, 317 Mo. 951) and that usually, if not always, recovery cannot be had at law upon the premise of an equitable lien (Langford v. Fanning, 7 S. W. (2d) 726), yet, an action for money had and received is a peculiar one wherein equitable doctrines receive recognition. It is, perhaps, one of the most elastic of actions at law, and exemplifies the theory of all law, to-wit, to secure from the defendant compensation or payment to the plaintiff of that which in good conscience defendant cannot retain and ought to pay. As was said in Federal Land Bank v. Life Ins. Co., 260 S. W. 822, 1. c. 823:

"It is an action 'so favored by courts and is so flexible in form and relief that it levies tribute indifferently on equitable as well as strictly legal principles.' . . .. The accepted rule is that 'the action lies where defendant has received or obtained possession of the money of the plaintiff, which, in equity and good conscience, he ought to pay over to plaintiff.' " [See also, Third National Bank of St. Louis v. Savings Bank, 149 S. W. 495, 244 Mo. 544, 1. c. 581; Whitecotton v. Wilson (Mo. App.), 197 S. W. 168, and cases cited therein.]

Defendant contends, directing our attention to certain authorities, that the agreement, whether considered either as an agreement *in praesenti* or one to operate in the future, was not legally effectual because the physical possession of the note was then with the bank, arguing that delivery of possession is an essential prerequisite to the validity of a pledge. We do not deem it necessary to distinguish the cases cited, because the agreement does not create a pledge in its strict legal sense, nor is any such effect claimed for it. It is only a transfer or assignment of what might well be termed the Chorltons' equity of redemption or reversion; that is, their interest

in the note, subject to any valid and subsisting pledge of the bank. That this may be legally done is beyond any question. It is a frequent transaction in the commercial world. [Bank v. Brown, supra; Helm v. Albers Com. Co., 199 S. W. 1008, 244 Mo. 38, 46; Southworth Co. v. Lamb, 82 Mo. 242.] "Subject to the rights of pledgee, the pledgor may sell or assign his interest in the pledged property." [49 C. J. 967, sec. 165.]

Defendant further urges that a partial assignment of an account without the consent of the debtor is without sufficient validity to enable the assignee to question subsequent assignments or disposition thereof, citing Pickett & Sexton v. School District, 186 S. W. 533, 193 Mo. App. 519, 526. We do not see the applicability of this unquestioned legal proposition. The transfer or assignment here was of the whole note or equity therein, although it was as security, and not absolute. .

Defendant also urges there can be no recovery because this suit was based on the original pledged note and it was concededly "cancelled," paid and surrendered. However, there can be no question but that the $3200 note was merely a renewal thereof, and it is so referred to, in the agreed statement of facts dictated by counsel into the record. This $3200 note is also referred to in the amended answer and in the reply. The cause of action was not based on the pledged note, either the original or renewal, but grows out of the agreement conveying the original pledged note as security. While the evidence discloses the money eventually realized from the transaction was derived immediately from a renewal thereof, and therefore only indirectly from the original note, this in no wise diminishes plaintiff's right to recover. The cause of action adhered to throughout was for money received, which, by virtue of certain pleaded circumstances noted, to-wit, the agreement, notice, etc., plaintiffs were entitled to. The basic right thereto flowed from the agreement and defendant's notice thereof. Upon this foundation plaintiffs pleaded and proved their right to recover. We do not agree with defendant's construction of the agreement to the effect that it amounted only to an agreement to transfer, assign or pledge in the future. We do not believe some other and further act at some future date was contemplated or necessary under the agreement to effectuate the transfer. The "giving" was self-executing. By this instrument a note for the rent debt was promised, and the Pittman note (subject to the fund's pledge) was then given to attend the promised rent note as collateral security. From the time the rent note was executed, the Pittman note automatically, and without more, secured it. This is the plain meaning of the agreement. Indeed it might well be held that the "giving" of the Pittman note was immediate, present and concurrent with the execution of the agree-

ment therefor. While the controlling language is badly phrased and rather awkward in expression, yet, if the order of the phrases in the sentence be transposed, such a construction is almost imperative. Suppose the sentence read: "They agree by giving as collateral a note for the sum of $5894.26 given by W. O. Pittman and wife to secure the said note." Would it then be doubted that the agreement recited an immediate "giving" or appropriation? Clearly the "giving" thus presently created was for the purpose of securing a rent note to be then or thereafter executed, and which it appears was executed at the time.

Defendant, having full knowledge of the agreement before it parted with anything, ought to have protected itself. Having failed to do so, it must suffer the consequences of the situation into which it voluntarily placed itself. In consideration of the foregoing, upon the record here presented, the judgment was for the right party and must be affirmed. It is so ordered. *Bland, J.,* concurs; *Trimble, P. J.,* absent.