Vernon P. HATHAWAY, Jr., and Mary B. Hathaway, his wife, Respondents,

v.

Martha E. HELMKAMP and James R. Bernhoester, Defendants-Appellants,

and

First National Bank of Wellston, a corporation, Intervenor Defendant-Appellant.

No. 53048.

Supreme Court of Missouri, Division No. 2.

May 13, 1968.

Shaw, Hanks & Bornschein, by Charles M. Shaw, Clayton, for respondents.

Smith, Smith & Smith, Earl G. Smith, St. Louis, for appellants.

HERBERT K. MOSS, Special Judge.

This is an appeal from the Circuit Court, County of St. Louis, wherein Plaintiffs sought to enjoin the foreclosure of real property under a second deed of trust on the ground that a certain promissory note was invalid for failure of consideration, that, therefore, the second deed of trust to secure the note was invalid and for such other relief as Plaintiffs may in equity be entitled to. The Court found for the Plaintiffs in that the note was unenforceable for lack of consideration and permanently enjoined the Defendants from selling or advertising for sale the real estate described in the second deed of trust.

 In order to establish jurisdiction in the Supreme Court a question of title must be directly involved, must be in issue, and the judgment should be one affecting the title in some way. Suits to enforce or enjoin the enforcement of liens, valid in their inception or to adjudicate liens, do not involve title to real estate and do not confer appellate jurisdiction in the Supreme Court. If the validity of the lien, ab initio, is in issue, jurisdiction is on that theory accepted in the Supreme Court. Shiner v. Polk, Mo.Sup. (1963), 366 S.W.2d 449, 451; Castorina v. Herrmann (1937), 340 Mo. 1026, 104 S.W.2d 297 (lack of consideration); Hendrix v. Goldman, Mo. Sup., 92 S.W.2d 733 (lack of consideration).

There is a distinction (affecting appellate jurisdiction) made in the decisions between a suit to set aside a deed of trust on the ground it is void ab initio and a suit in which it is sought to prevent enforcement on the ground the right to enforce has been lost by something happening after execution. Peters v. Kirkwood Federal Savings & Loan Ass'n (1939), 344 Mo. 1067, 130 S.W.2d 507, 508, 509.

 Under the authorities above, jurisdiction is in this Court under Article V, Section 3 of the 1945 Constitution of the State of Missouri, V.A.M.S., for the reason title to real estate is involved.

 Plaintiffs question the sufficiency of the motion for new trial to preserve the issues presented on appeal, but we have concluded the motion was sufficient, especially in view of Supreme Court Rule 79.03, V.A.M.R.

Plaintiff Vernon P. Hathaway, Jr., a used car dealer doing business as Graham Motor Mart since 1963, sold and assigned chattel mortgages and notes to the Defendant, First National Bank of Wellston, and endorsed notes "with recourse". He also borrowed money from this bank on a "floor plan". A few days prior to December 30, 1965, the bank and Hathaway discussed the fact that cars were missing from the "floor plan" inventory. In this respect, the bank, according to testimony of its president, Melvin H. Klingler, made a $40,000.00 charge-off to allow Hathaway to continue in business. Hathaway testified the shortage in cars was uncovered in a February, 1966 inventory, although he also testified he and Klingler had a conversation and that Klingler wanted to "reduce those cars for tax reasons" before the end of the year (presumably, 1965). Klingler also testified he told Hathaway on or about December 26, 1965, there was approximately $10,000.00 worth of cars missing.

In need of current operating funds on December 30, 1965, Plaintiff Hathaway and his wife executed a $5,000.00 note payable to the defendant bank on demand and pledged to the bank two assigned life insurance policies and a second deed of trust on the Plaintiffs' home dated December 30, 1965, which secured a ten-thousand-dollar promissory note executed by the Plaintiffs on December 30, 1965. The $10,000.00 note was due June 30, 1966, and was made payable to Martha E. Helmkamp, an employee of the defendant bank. James R. Bernhoester, also an employee of defendant bank, was party of the second part and Helmkamp was party of the third part in the aforementioned deed of trust. Helmkamp endorsed the $10,000.00 note to

defendant bank and it was held by the bank in its collateral file. The $10,000.00 note was described in the deed of trust, and, further, said deed stated Plaintiffs being justly indebted to party of third part for borrowed money in the principal sum of $10,000.00 secured said sum with the $10,000.00 promissory note and with the deed of trust. On December 30, 1965, the bank credited Plaintiffs' checking account with $2,300.00 and also issued a cashier's check in the sum of $2,700.00 payable to the Graham Motor Mart, which was deposited to that account on January 11, 1966.

On January 10, 1966, Plaintiffs executed a note payable to the defendant bank on demand in the sum of $2,000.00 and the same collateral, to-wit, the $10,000.00 promissory note and the deed of trust, was pledged as security for payment of this note. On January 11, 1966, the bank credited the Plaintiffs' checking account with $2,000.00 which was deposited along with the aforesaid cashier's check of $2,700.00.

The defendant bank's loan ledger for Plaintiffs' account shows credit to their account of $5,000.00 on December 30, 1965, being the $2,300.00 deposit and the cashier's check issued to Hathaway for $2,700.00 and a credit on January 11, 1966, of $2,000.00, making a total of $7,000.00, which Plaintiffs received for the $5,000.00 note and the $2,000.00 note executed when the Plaintiffs pledged the two life insurance policies and the second deed of trust and the $10,000.00 note it secured.

By the terms of the $5,000.00 note dated December 30, 1965, the Plaintiffs, as collateral security, pledged "assigned life insurance policies, $10,000.00 D/T" and also warranted ownership of same. The $2,000.00 note dated January 10, 1966, with respect to collateral security recited "see collateral with other note".

On July 21, 1966, defendant bank, after the five-thousand-dollar and the two-thou-sand-dollar notes became due and after written demand for payment and none being received sent the insurance policies to the insurance company for redemption, received checks for $255.32 and $2,676.07 which were credited against the $5,000.00 note, reducing it to $2,068.61 and leaving the $2,000.00 note past due and unpaid. The pledged second deed of trust was subject to a first deed of trust, the latter having a principal balance due of approximately $17,500.00 held by the Community Federal Savings and Loan Association, which association started foreclosure because the note it secured was in default. The defendant bank took over the second deed of trust and $10,000.00 note and started foreclosure proceedings which proceedings were enjoined by the trial court. The foreclosure on the first deed of trust was commenced after defendant bank started foreclosure on the second deed of trust, and to protect its interest, the defendant bank purchased from Community Federal Savings and Loan Association the first deed of trust, which the bank now owns.

There is a conflict in testimony with respect to circumstances leading up to the Plaintiffs signing the $10,000.00 note and second deed of trust. Plaintiff Hathaway admits he received money as credit to his account in the amount of $4,700.00 and denies ever having seen the cashier's check deposited by defendant bank in the Graham Motor Mart account. Hathaway testified he was to receive from defendant bank $5,000.00 in cash and the defendant bank was to retain $5,000.00 to place in his account at his request. He also testified Klingler told him the defendant bank would give him ten thousand dollars on his house and twenty-three hundred dollars on his insurance policies. Klingler, for defendant bank, testified the bank loaned Plaintiff Hathaway on December 30, 1965, the sum of $5,000.00 to stay in business and the bank would loan him this sum on the collateral; that the balance of the collateral would be used to repay any loss the bank

might sustain in the event Hathaway was not successful in carrying on his business. Klingler testified in a discussion with Hathaway on or about December 26 or 27, 1965, the bank charged off $40,000.00 on cars missing from inventory and demanded Hathaway put up additional collateral and it was agreed between the bank and Hathaway that Hathaway would put up the second deed of trust and insurance policies as collateral.

Appellants urge that the trial court erred in finding no consideration for the $10,000.-00 second deed of trust note, contending the consideration was the $7,000.00 advanced by the bank to the Plaintiffs on the five-thousand-dollar and two-thousand-dollar dollar notes, which advance would not have been made by the defendant bank unless Plaintiffs pledged the two insurance policies and the deed of trust. The defendant bank further contends the Plaintiffs were in such circumstances the bank would not have advanced the seven thousand dollars to Plaintiffs without collateral security other than automobiles.

Respondents-Plaintiffs contend their evidence was they expected to receive ten thousand dollars for the ten-thousand-dollar note signed; that Appellants' contention the ten-thousand-dollar note was collateral for some other loan, is not supported by evidence of Appellants; that Appellants' trial position was the ten-thousand-dollar note and deed of trust given to secure it was collateral for some other debts owed by Respondents, to the bank. Respondents-Plaintiffs urge that if the defendant bank were looking for collateral, it would need only a deed of trust to secure other debts due and owing; that it is inconsistent that an entirely new debt would be created and secured by a deed of trust; that there was no evidence of a ten-thousand-dollar consideration; finally, that Respondents vigorously deny the ten-thousand-dollar note and deed of trust was given as collateral and

even if so, the Appellants would have a cause of action for $17,000.00 and "have paid only $7,000.00 out".

It should be noted Defendant's Exhibit 3, the $5,000.00 note dated December 30, 1965, and Defendant's Exhibit 4, the $2,-000.00 note dated January 10, 1966, were each admitted in evidence. Exhibit 3, executed by the Hathaways, specifically stated the "assigned life insurance policies, $10,000.00 D/T", were pledged to defendant bank as collateral security for the payment of the note (the $5,000.00 note) and for payment of any other liabilities, direct or contingent, "now existing"; further, that said collateral shall be held for any other liability of the makers to the bank; that if makers fail to pay said note, the bank may at public or private sale convert said collateral to cash. Exhibit 4 described the collateral security as "see collateral with other note" and contained a pledge agreement the same as in Exhibit 3. It should be noted Klingler testified regarding the $5,-000.00 note, that he told Hathaway "we would loan him five thousand dollars and the balance of his collateral would be used to repay any losses we might sustain in the event he was not successful in carrying on his business". Klingler admitted in testimony he knew "that this second deed of trust secured a note for which no money had been paid from Mrs. Helmkamp to Plaintiffs", but he testified the deed of trust "was taken as collateral security for payment" of the five-thousand-dollar and the two-thousand-dollar notes.

The evidence is clear that the parties knew the Hathaways were dealing with defendant bank and not with Helmkamp and Bernhoester. At page 94 of the transcript the trial court stated "The basic issue is whether or not the ten-thousand-dollar deed of trust and a note securing the same are in themselves legally valid. In this court's opinion there has to be some consideration for their execution. The fact

there was plenty of reasons of why the bank —economic and legal reasons—for the bank getting as much collateral as possible, does not help in resolving the basic problem of consideration". The defendant bank retained the ten-thousand-dollar note and deed of trust and the insurance policies in the bank's collateral files and the five-thousand-dollar and two-thousand-dollar notes were kept in the active loan files.

■ This court must make its own findings de novo on the record, giving due deference to the trial judge on matters of conflicting evidence, supra; and does now find the $10,000.00 note and second deed of trust were pledged as collateral security for the payment of the five-thousand-dollar and the two-thousand-dollar notes as spelled out specifically in the latter two notes signed by Plaintiffs, and that Plaintiffs received seven thousand dollars from the bank on the latter two notes. The sole question is, was there consideration for the execution of the ten-thousand-dollar note.

Appellants rely on the recent case of H. B. Deal Construction Co. v. Labor Discount Center, Inc. et al., Mo.Sup., 418 S.W.2d 940, 949, which adopts the rule " 'a debtor may give two notes for the same indebtedness, one, the principal note, secured by another, as collateral, the collateral note being secured by a deed of trust on real or personal property. In such case, the mortgage securing the collateral note may be foreclosed by the creditor who is entitled to receive the proceeds to pay the sum due on his principal note. Dibert v. D'Arcy et al., 248 Mo. 617, 154 S.W. 1116.' Graham v. Finnerty, Mo.Sup., 232 S.W. 129, 131 [2]." In the H. B. Deal case the court held there was consideration for the two-million-dollar note and deed of trust, namely, the $1,900,000.00 loaned to the maker of the note. Other similarities between the H. B. Deal case and our case in hand are: the trustee named in the deed of trust and the payee of the note and named beneficiary in the deed of trust were officials of the lending bank; the deed of trust recited the note was given for borrowed money but the lending bank official did not lend any money to the borrower and he was a mere nominee, having no personal interest in the transaction and did immediately endorse the note without recourse to the lending bank; nor did the lending bank advance any money to the maker on the collateral note secured by the deed of trust; that the borrower represented by the very terms of the collateral note, it was the owner of the note and the deed of trust; that by the very terms of the series of promissory notes the collateral note and deed of trust were "pledged as collateral security for the payment of the within note"; the series of promissory notes were payable to the lending bank. In two aspects the facts in the H. B. Deal case are somewhat dissimilar: (a) in the Deal case the trustee and beneficiary in the deed of trust, although bank officials were said to have acted for the borrower; (b) in the Deal case both lender and borrower intended and understood the deed of trust was the basic security for the loan. With respect to (a) we now hold this as not a controlling factor and with respect to (b), we note the defendant bank considered the note and deed of trust as basic security and that the five-thousand-dollar and two-thousand-dollar notes recited specifically that the ten-thousand-dollar note and deed of trust was collateral security.

The H. B. Deal case cited Graham v. Finnerty, Mo.Sup., 232 S.W. 129. The pertinent facts in the Finnerty case were: Thomas Finnerty and his wife, Kate Finnerty, owned real property as tenants by the entirety. On April 1, 1908, they executed a deed of trust on the property to secure a note of even date in the sum of six thousand dollars payable in three years, together with interest notes. The notes were endorsed without recourse by payee

and delivered back to Thomas Finnerty; thereafter, a five-year extension from April 1, 1911, was written upon the principal note and new interest notes were executed. The interest notes were endorsed by payee and re-delivered to Thomas Finnerty. On October 16, 1911; Finnerty purchased a saloon from one J. N. Crebs for six thousand dollars, giving his monthly notes for $125.00 each therefor to Crebs and at the same time pledged with Crebs as collateral the six-thousand-dollar note and interest notes and the deed of trust. Finnerty defaulted on such monthly notes and Crebs sold the unpaid monthly notes for value and transferred to the purchaser thereof the six-thousand-dollar note, the interest notes and the deed of trust. Considerable litigation ensued founded on a number of points. It was argued among other points, the six-thousand-dollar note being without consideration when first made, there was, therefore, no debt and, therefore, there could be no mortgage. The court said, 232 S.W. 1. c. 131, "But there was a debt from Thomas Finnerty to J. N. Crebs, when Finnerty pledged the $6,000 note secured by the deed of trust to Crebs to secure the monthly notes aggregating $6,000 for the purchase price of the saloon and contents, which Crebs sold to Finnerty. It is well settled that a debtor may give two notes for the same indebtedness, one, the principal note, secured by another, as collateral, the collateral note being secured by a deed of trust on real or personal property. In such case, the mortgage securing the collateral note may be foreclosed by the creditor who is entitled to receive the proceeds to pay the sum due on his principal note." See also Dibert v. D'Arcy, 248 Mo. 617, 154 S.W. 1116.

■ A pledge casts a lien on the property pledged which is more than a simple lien. The nature and extent of the lien, in a particular case, are governed by the terms of the contract of pledge, and, as long as the debt remains unpaid, the collateral security continues to be charged with the lien unless changed by subsequent contract or conduct of the parties. 72 C.J.S. Pledges § 24, pp. 32 and 33.

Bitzenburg v. Bitzenburg (1950), 360 Mo. 70, 226 S.W.2d 1017; Batson v. Peters, Mo.Sup. (1935), 89 S.W.2d 46, and Cobble v. Garrison, Mo.Sup. (1949), 219 S.W.2d 393, are cited by Plaintiffs-Respondents as authority for the proposition that a deed of trust is not valid unless founded upon a consideration. In the Bitzenburg case, supra, this court affirmed a decree cancelling a note and deed of trust on the grounds the note and deed of trust were fraudulently procured and without consideration. In the Batson case, supra, this court affirmed a decree to cancel a deed of trust where a holder thereof who occupied a fiduciary relationship to grantor by having complete charge of his property, released an old deed and obtained a new deed of trust including additional property by representing that it was a renewal of the old deed on the same security. In the Cobble case, supra, this court affirmed a decree to adjudge invalid a deed of trust for entire want of consideration. Upon the facts, these authorities cited by Plaintiffs are distinguishable from the case at bar.

■ We now hold under the rule of the H. B. Deal and the Finnerty cases above that there was consideration for the ten-thousand-dollar note and second deed of trust, namely, the seven thousand dollars loaned to the makers of the note.

Judgment and decree of trial court reversed and remanded with directions to enter a decree in favor of Appellants and against Respondents.

All of the Judges concur.