Paul **THOMASON** and Shirley J. Thomason, Plaintiffs-Appellants,

v.

Walter L. **MILLER** and Colville M. Miller, Defendants-Respondents.

No. KCD 27988.

Missouri Court of Appeals, Kansas City District.

Aug. 29, 1977.

William A. Peterson, Robert L. Rasse, Robert H. Ravenhill, Rasse & Rasse, Marshall, for plaintiffs-appellants.

W. R. Schelp, Robert L. Langdon, Gary R. Bradley, Bradley, Skelton & Schelp, Lexington, for defendants-respondents; Harris & Reid, Marshall, of counsel.

Before SWOFFORD, P. J., PRITCHARD, C. J., and DIXON, J.

DIXON, Judge.

Plaintiffs sought recission of a real estate contract and cancellation of a deed and deed of trust on a theory of fraud as to the boundary line of the property involved. The court, sitting without a jury, found for the defendants. Plaintiffs appeal, contending that the trial court's refusal to find in accordance with their proffered findings of fact and conclusions of law, was error. The thrust of plaintiffs' argument is that all of the elements of actionable fraud are present by unassailable proof. They concede that if any element is not supported by the proof, then the judgment must be sustained. The plaintiffs concede also that this court reviews under Rule 73.01. The rule has been explicated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976):

" . . . the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, . . . Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong."

Considering the evidence by that standard, it may be summarized as follows:

Plaintiffs, who at the time resided in Springfield, Illinois, contacted a real estate agent in Marshall, Missouri, indicating their desire to purchase a business. The real estate agent, after his initial solicitation by the plaintiffs to find such a property for them, went to the defendants' business and asked if their business and property were still for sale. The business had been listed with the agent's broker for some period of time prior to 1971. After obtaining a price from the defendants and an agreement to sell, the agent contacted the plaintiffs and they, in turn, authorized him to make an offer for the purchase of the defendants' drive-in restaurant equipment, a separate residence, and the real estate upon which the business and residence were located. After negotiations between the parties in which the agent participated, the parties reached agreement for a sale price of $60,000; and, on September 28, at the suggestion of the real estate agent, they went to the office of an attorney who prepared a contract. The contract called for the defendants to provide an abstract; and, at the specific suggestion of the real estate agent, a provision was added to the contract to require a survey of the property. At the request of both parties, the surveyor made the arrangements for the survey. The cost of the survey was to be divided between the buyers and the sellers. Such a survey was made and was dated October 15, 1971. The survey clearly reveals that the residence encroaches over the north boundary line of the property owned by the defendants. The survey contains a "note" which, in unmistakable terms, calls attention to the encroachment. The surveyor filed the survey in the Recorder's Office, but the date of filing is not apparent in the record, the surveyor testifying merely that he would have filed it as soon as he was paid for the survey. The defendants' portion of the survey cost was paid on November 5, 1971. The attorney who handled the matter divided the cost of the contract between the plaintiffs and the defendants, and the defendants paid for the drafting of their deed to the plaintiffs. Plaintiffs did not have the abstract examined.

The sale was closed on November 5, 1971, at the office of the attorney. The plaintiffs, defendants, real estate agent and his broker, and the lawyer were present. At that time, the testimony is undisputed that the survey was in the possession of the attorney, and a copy of it was given to the real estate agent at that time. The contract provided for a $15,000 down payment which was paid, and a promissory note, secured by a deed of trust in the amount of $45,000. This original note and mortgage called for semi-annual payments of principal and interest. The plaintiffs entered into possession and thereafter operated the business located on the premises. In 1972, the plaintiffs were delinquent in their payments, and the defendants offered and the plaintiffs accepted a change in the terms and provisions of the note and deed of trust. The original note was cancelled, and the plaintiffs executed a new note providing for payments of $500 per month of both interest and principal. In 1973, the plaintiffs again became delinquent on the monthly payments and continued in their delinquency until they filed the present suit for recission and cancellation in May of 1974. There is some indication that the business had declined because of a change in location of a highway. The delinquency continued after the filing of the suit, and the defendants sought to foreclose the deed of trust because of the nonpayment of the note. The trial court entered a temporary restraining order against the foreclosure action.

The evidence with respect to what statements were made about the boundaries of the property is sharply conflicting. Plaintiffs contended either the agent or the defendants informed them that some red flags marked a boundary and that the north boundary was about 20 feet north of the house. The agent and the defendants denied that any red flags were ever mentioned or visible on the premises and denied giving any specific information about the location of the north boundary. The evidence is likewise conflicting as to exactly what occurred with respect to the survey immediately before and at the time of clos-

ing. The plaintiffs claim that they inquired at the time of closing about the survey and were told that it had not been completed. The defendants, on the other hand, claimed that when the survey was delivered to them some few days prior to the closing that they learned for the first time of the encroachment and called the real estate agent. The defendants say that the real estate agent said he would "take care of it" and that he would give the buyers a copy of the survey. The real estate agent denies that conversation, but admits that at the time of the closing the attorney gave him a copy of the survey. The attorney testified that the survey was in his hands at the time of closing. He did not recall giving a copy of the survey to the plaintiffs. The attorney likewise indicated that, at a meeting on the day prior to the closing when the plaintiffs and the defendants were present, the survey was in his hands, although he was not asked the specific question as to whether the survey was discussed on that date. At the time the note and deed of trust were renegotiated, the plaintiffs were represented by counsel who advised them to have the abstract brought to date and examined; but they did not do so, and the plaintiffs claim that they did not have actual knowledge of the encroachment until the spring of 1974.

The plaintiffs' petition in this case is based upon a general theory of fraud by means of active misrepresentation, the plaintiffs claiming that the "agent" of the defendants—the real estate agent—misrepresented the location of the north boundary. When the evidence was concluded and the plaintiffs submitted their proposed findings of fact and conclusions of law to the trial judge, the plaintiffs' theory was different than the pleaded theory of their petition, for they cited the trial judge to cases involving recission on a theory of constructive fraud. Among these cases was *Ellenburg v. Edward K. Love Realty Co.*, 332 Mo. 766, 59 S.W.2d 625 (1933), in which the court upheld recission in a situation where the defendants were completely innocent in their representations and had no intent or knowledge of the falsity of the statements

they were making as to the state of the title involved in that case but which, in fact, was not as represented. Whichever theory is applied to the facts of this case, whether it be one of actionable fraud by direct misrepresentation or so-called constructive fraud on the part of the defendants by reason of the acknowledged error with respect to the north boundary line of the property, the essential and determinative issue is the reliance of the plaintiffs upon the mistake or misrepresentation.

■ Critical to the determination of that issue is the status and responsibility of the real estate agent and the lawyer. The real estate agent was solicited by the plaintiffs to act for them in finding a business for them to purchase, and he undertook that agency. He then solicited the defendants to become their agents for the sale of property, and he became their agent for that purpose. He suggested that a survey be made and made the arrangements for the survey. He thus became the dual agent of the plaintiffs and the defendants with their knowledge and apparent consent. *Whittlesey v. Spence,* 439 S.W.2d 195, 199 (Mo.App.1969). The attorney, likewise, was manifestly the agent of both plaintiffs and defendants in the preparation of the contract, for it is acknowledged that he was paid by both for that work. So far as the record appears, he continued to act in a dual capacity through the closing of the transaction. In *Fuchs v. Leahy,* 321 Mo. 47, 9 S.W.2d 897, 900 (1928), the court adopted a statement from a text book with respect to dual agency to the effect that misconduct of the agent cannot be imputed to one principal rather than the other, and that principle was affirmed in *T. J. Moss Tie Co. v. Stamp,* 25 S.W.2d 138, 141 (Mo.App.1930), where the court said:

> "Furthermore, where two or more principals employ the same agent, the misconduct of the agent cannot be imputed to any one of the principals who is not actually at fault, since each of the principals is under an equal duty to supervise the agent, and protect his own interest."

It is well settled that the knowledge of an agent is the knowledge of the principal. *Rainey v. Foland,* 555 S.W.2d 88 (Mo.App. 1977). [Filed August 8, 1977].

Applying the principles of agency to the record of this case, the judgment of the trial court is amply supported by the record.

■ The trial court could have found that either the real estate agent or the lawyer were dual agents. There was really no evidence to the contrary. The finding of such an agency relationship would require that the knowledge of such an agent be imputed to the principal. There can be no dispute that the lawyer knew of the encroachment. As to the real estate agent, he claimed he did not carefully examine the survey; but if the defendants' evidence is believed, as the trial court could have, the real estate agent knew of the problem three or four days prior to the closing and promised defendants that he would advise the plaintiffs. The defendants were then not guilty of any misrepresentation by concealment of the survey results. If the plaintiffs had been misinformed by the real estate agent, as to the boundary as they claimed, he was their agent as to the survey and his knowledge was their knowledge. Likewise, as a dual agent, his actions cannot be imputed to either principal.

Thus, reviewing this record under Rule 73.01 and *Murphy v. Carron, supra,* the evidence is sufficient for the trial court to have found that the plaintiffs failed to show reliance upon either fraudulent misrepresentations or the constructive fraud theory of *Ellenburg* in the closing of the contract.

The judgment is affirmed.

All concur.