**Tom C. GIBSON and Dorthea L. Gibson, Appellants,**

v.

**Jerry D. HARL and Sharon Harl, Respondents.**

**No. WD 45775.**

Missouri Court of Appeals, Western District.

April 13, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 1, 1993.

Application to Transfer Denied Aug. 17, 1993.

---

Thomas H. Rost, Jefferson City, for appellants.

Craig A. Van Matre and Thomas M. Harrison, Columbia, for respondents.

Before BRECKENRIDGE, P.J., and SHANGLER and SPINDEN, JJ.

SHANGLER, Judge.

The plaintiffs Tom Gibson and Dorthea Gibson, husband and wife, sued the defendants Jerry D. Harl and Sharon E. Harl, husband and wife, on a claim for money due on an $80,000 promissory note that the Harls had originally issued to Terry Gibson and Mary Sue Gibson, husband and wife. [Terry Gibson is the son of the plaintiffs.] The defendants Harl made answer and brought a third-party petition against Terry Gibson and Mary Sue Gibson. The answer asserted several affirmative defenses and pleaded also that the promissory note was not a negotiable instrument, and so was subject to all defenses had by the Harls. The defendants Harl also counterclaimed against the plaintiffs Gibson for a declaratory judgment that the promissory note was paid in full. Their third-party petition sought a declaratory judgment that the promissory note was subject to their defenses and that no money was due on the instrument, for an award of attorney fee against third-party defendants Terry and Mary Sue Gibson as makers of the note, and for other relief.

The court gave judgment in favor of the defendants Harl on the petition of the plaintiffs Gibson. The court gave declaratory judgment in favor of the defendants Harl on their counterclaim against the plaintiffs Gibson and in favor of the third-party plaintiffs Harl on their third-party petition against third-party defendants Gibson by declarations that the promissory note was not collectible, was paid in full by the Harls, that the defenses possessed by the Harls prevented any sums being collected on the note and that the deed of trust executed by the Harls to Terry and Mary Sue Gibson was void and no longer constituted a lien against the real estate. The plaintiffs Tom and Dorthea Gibson appeal.

### The Real Estate Transaction

Third-party defendant Terry Gibson was a shareholder in four Missouri corporations known as Shorty's Fried Chicken, Inc., Shorty's Missouri Fried Chicken, Inc., Gibwell, Inc. and Granny's Fried Chicken, Inc., during the period of 1980 through April 22, 1987. Shorty's Fried Chicken, Inc. was a franchisor of restaurants while the other three corporations operated restaurants in the central Missouri area including Columbia. Third-party defendants Terry Gibson and Mary Sue Gibson owned certain improved real estate locations in which their corporations operated their restaurant businesses.

In 1978, they acquired title to the real estate described as: "Lots 308 and 309 of the original Town now City of Columbia, Boone County, Missouri." From 1978 until 1984, the third-party defendants Gibson leased this property to Terry Gibson's corporation, Granny's Fried Chicken, Inc., which operated its restaurant there during that period. On November 20, 1984, the defendants Harl and the third-party defendants Gibson entered into a contract for the sale of the real estate, and on December 28, 1984, title was conveyed to the Harls. The purchase price under the contract was $800,000. The Harls financed the purchase by a loan of $640,000 from Great Southern Savings and Loan secured by a first priority deed of trust in favor of the lender. To further finance the purchase, the Harls were loaned $80,000 by the sellers of the real estate, third-party defendants Gibson, and executed to them a promissory note in that amount. The terms of the note required the Harls to make payments of $732 per month to the sellers Gibson beginning in January of 1985. It was secured by a second priority deed of trust, which was duly recorded in Boone County.

A condition to the closing of the transaction under the real estate contract was that franchisor Shorty's Missouri Fried Chicken, Inc., commit to a written lease of the premises on terms satisfactory to the Harls, the purchasers. Accordingly, on December 28, 1984, the Harls and Granny's Fried Chicken, Inc., entered into a lease of the property whereby Granny's was to pay the Harls a base rent of $6,900 per month, due on the first day of each month during the term of the lease. Granny's obligations under the lease were jointly and severally and personally guaranteed by the third-party defendants Gibson. The lease included provisions for a late charge of $20 for each day the rent was delinquent, for reimbursement by the lessee for real estate taxes paid by the lessor, and for an attorney fee to the prevailing party in any action to enforce the lease.

The trial court entered detailed findings of fact as to the transactions between the third-party defendants Gibson and the Harls. The court found, among others, that: (1) The monthly rent payment by the Gibsons under the lease was intended to provide sufficient money each month to enable the Harls to make the payments due under the promissory note to the Gibsons and the loan from Great Southern Savings and Loan; (2) The Harls would not have concluded the real estate contract with the Gibsons or the transactions contemplated by its terms without a valid lease of the real estate from the Harls to Granny's and the personal guarantees of its obligations by the Gibsons; (3) The Harls would not have executed and delivered their note to the Gibsons without a valid lease of the real estate from the Harls to Granny's; (4) The real estate contract, the note and lease were all components of a single transaction and were executed, exchanged and delivered simultaneously by the Harls and the Gibsons.

### The Attempted Sale of the Promissory Note

Thereafter, in mid–1985, Terry Gibson needed more capital for his business operations and approached W. Michael Stroupe, a Senior Vice President and Executive Vice President of Boone County National Bank for that purpose. Gibson offered to sell the Harl note to the Boone County National Bank, but Stroupe refused. Then in December of 1985, when the Gibsons had possession of the note and were still receiving payments under the note, Terry Gibson

approached Craig A. Van Matre, an attorney, concerning the sale or discount of the note to a client. Van Matre contacted the trustee of an employees' pension plan and trust concerning a possible purchase of the note. Van Matre prepared on behalf of the trustee of the plan and trust an "estoppel certificate" for signature by the Harls in connection with the contemplated sale. The Harls refused to sign the certificate upon the advice of their then attorney, Richard C. Thomas. Van Matre advised the trustee not to purchase the note because the note was not negotiable and so subject to all the defenses that the Harls could assert.

It was then when Terry and Mary Sue Gibson learned that the note was not negotiable and therefore subject to any defenses or claim for setoff of the Harls.

### The Transfer of the Promissory Note

Terry Gibson then again approached Boone County National Bank concerning a sale or pledge of the note to the Bank as collateral for an additional loan. Stroupe was by then aware that Van Matre as counsel for the trustee of the pension plan had examined the note and expressed opinion that the note was not a negotiable instrument and was subject to all the defenses of the Harls. On February 15, 1985, Terry and Mary Sue Gibson borrowed $270,508.94 from the Boone County National Bank to finance business operations. The plaintiffs Tom and Dorthea Gibson guaranteed $100,000 of this first loan.

On January 10, 1986, Terry and Mary Sue Gibson borrowed another $80,000 from the Boone County National Bank to finance business operations. The Bank loaned the money to Terry and Mary Sue Gibson only after Tom and Dorthea Gibson personally guaranteed repayment of the second loan. As further collateral for the second loan, Terry and Mary Sue Gibson pledged the Harl note to Boone County National Bank by a security agreement. As a part of the security transaction, the third-party defendants Gibson delivered the original of this note to the Bank.

The security agreement allowed the third-party defendants Terry and Mary Sue Gibson to continue to receive all payments and interest due under the Harl note on or after January 10, 1986, even though the note was in the possession of the Boone County National Bank. The Harls made all payments to the Gibsons and not to Boone County National Bank. The court found that neither the Bank nor the Gibsons informed the Harls of the pledge of the note, nor did either of them request the Harls to make future payments due under the note to the Bank. The Harls were neither informed nor notified by anyone of the pledge of the note prior to March 31, 1987.

The court found that the pledge of the note by Terry and Mary Sue Gibson to the Boone County National Bank "did not constitute a complete assignment of the Note, but was rather merely a pledge of the note."

After August 1, 1986, neither Granny's Fried Chicken, Inc., nor third-party defendants Gibson made any rental payments under the lease. Since the Harls used the rent money received under the lease to make payments on the note, when the rent payments ceased, the payments on the note ceased. The court found that the third-party defendants Gibson gave their consent to the Harls to cease payments on the note for as long as the third-party defendants Gibson and lessee Granny's were in default under the lease.

As of March 31, 1987, the third-party defendants Gibson and Granny's were in default under the lease and were delinquent in payment of rent and other charges in the amount of $106,339.03. The third-party defendants were personally liable in that amount to the Harls under their personal guarantees of the obligations of the lease. As of that date, the principal balance owed by the Harls on the note was $79,341.66 together with accrued interest of $5,553.92.

### The Lease Rescission Agreement

On March 31, 1987, the Harls and third-party defendants Gibson entered into an "Agreement to Rescind Lease and Cancel

Note Secured by a Deed of Trust." It was evident from the terms of the Agreement to Rescind Lease that a reason for that undertaking was to accomplish a mutual cancellation of the debts under the lease and under the note. An unexecuted copy of the Lease Rescission Agreement had been sent to Stroupe of Boone County National Bank before that date. The Bank was thus aware that the third-party defendants intended to cancel the lease in exchange for the cancellation of the note. They understood that the Lease Rescission Agreement would effect payment of the note in full. The court found that Boone County National Bank consented to the transaction contemplated by the Lease Rescission Agreement, and did not object to its undertaking by the third-party defendants Gibson. The court found, accordingly, that the Bank "thereby consented to the full payment of the Note pursuant to the Lease Rescission Agreement."

The court found that by the execution of the Lease Rescission Agreement the Gibsons canceled all past and future debt under the note in exchange for cancellation of the lease by the Harls and the discharge of all past and future payments under its terms.

A term of the Lease Rescission Agreement expressly provided: "The Gibsons hereby transfer and assign to the Harls (subject to the rights, if any, of the Boone County National Bank) the promissory note described above." The provision also included a direction by the Gibsons to their attorney to mark the note "paid in full" and execute on their behalf and record a release of the note and deed of trust.

### Third–Party Defendants File for Bankruptcy

On October 27, 1987, the third-party defendants Gibson filed a petition for bankruptcy under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District. Neither the Harls nor plaintiffs Gibson were listed as creditors on any of the schedules submitted by the third-party defendants in connection with the bankruptcy petition. Nei-

ther the Harls nor the plaintiffs Gibson received notice of the bankruptcy proceeding.

On November 6, 1987, the Boone County National Bank filed suit in the state court against Tom and Dorthea Gibson [the plaintiffs here] to enforce and collect on the guarantees given by them to the Bank in connection with the first loan and second loan to Terry and Mary Sue Gibson. Count I was to enforce and recover on the guarantee of the first loan. Count II was as to the guarantee of the second loan. Count I was settled by the payment of $75,000 by Terry and Mary Sue Gibson to the Bank. The money was from the sale of certain property which had been abandoned by the trustee in the bankruptcy proceeding. [No portion of the $75,000 settlement was paid by the plaintiffs here.] Count II was settled by payment by Tom and Dorthea Gibson [plaintiffs here] of $95,199.67 to the Bank. This amount was the exact balance of principal and accrued interest that was owed by third-party defendants Gibson to the Bank under the second loan as of January 29, 1988. The plaintiffs Gibson paid this amount to release their guarantee of the second loan and to be discharged as guarantors under its terms. There was evidence, and the court found, that the $95,199.67 paid by the plaintiffs Gibson to the Bank was solely to discharge them as guarantors on the second loan and that none of the money was paid for the transfer of the note to the plaintiffs Gibson. The court found expressly that the plaintiffs Gibson "paid no consideration for the transfer of the note to the Plaintiffs [Gibson]."

On January 29, 1988, the Bank assigned the note to the plaintiffs Gibson. The assignment recited, "FOR TEN DOLLARS ($10.00) AND OTHER VALUABLE CONSIDERATION, hereby acknowledged and received." The court found that the plaintiffs Gibson were aware that the defendants Harl claimed defenses to the note and what those defenses were prior to the time that the plaintiffs took possession of the note. Indeed, there was evidence that, prior to the assignment, attorney Van Matre had exchanged letters with Stroupe of

the Bank and also with Rost, attorney for the plaintiffs Gibson, that gave opinion that the note was not a negotiable instrument and that the Bank held the note subject to the Harls' defenses.

The original note was not offered or admitted into evidence at the trial. The trial court entered a series of conclusions of law to sustain the judgment.[1] The points on appeal call the validity of a number of them into question, and with them, the judgment that they derive.

### Issues on Appeal

The plaintiffs do not dispute the conclusions of law that the Harl note is not a negotiable instrument[2], that neither the plaintiffs Gibson nor the Bank are or were holders in due course of the note, and the transferee of a note takes subject to all defenses the makers [Harls] had against the note prior to the notice of assignment. However, the plaintiffs Gibson do dispute Conclusion of Law 21:

> The Plaintiffs did not pay value to acquire the Note, but rather the transfer of the Note to the Plaintiffs from the Boone County National Bank was made without consideration.

Section 400.3-303 RSMo.

The plaintiffs argue that they are not precluded from recovery of payment on the note merely because that paper is not negotiable or because they are not holders in due course. They insist that the status of transferee of a promissory note suffices to invest the right to collect it. They argue that as between the assignee and the debtor, or the obligor of the assigned note,

consideration is unnecessary, and cite *Young v. Hudson*, 99 Mo. 102, 12 S.W. 632 (1889).

Negotiability is not an essential quality of a promissory note. § 400.3-104(3); *Finney v. Shirley*, 7 Mo. 42 (1841); *Leroux v. Doniphan Retirement Home, Inc.*, 663 S.W.2d 791, 792[1] (Mo.App.1984). A note that is not negotiable may nevertheless be transferred by assignment. § 400.3-201(1); *Rotert v. Faulkner*, 660 S.W.2d 463, 468[2] (Mo.App.1983). Nor does the want of negotiability affect the liability of the maker to the assigns. *Leroux v. Doniphan Retirement Home, Inc.*, 663 S.W.2d at 792[1]. The assignee of a note which is not a negotiable instrument, however, takes it subject to all defenses the maker may have against the note prior to notice of the assignment. *Centerre Bank of Branson v. Campbell*, 744 S.W.2d 490, 495[6] (Mo.App.1988).

A transferee, moreover, has the rights of the transferor without regard to whether value was given. Section 400.3-201(1), Uniform Commercial Code Comment 2; 5 R. Anderson, UNIFORM COMMERCIAL CODE, § 3-201:6 (3d Ed.1984). A written promise of a person to pay a specific sum of money to another, signed by the promisor, itself imports a consideration. Section 431.020, RSMo 1986; *Rotert v. Faulkner*, 660 S.W.2d at 468[3, 4]. Thus, a person who sues on such a writing, even though not a negotiable instrument, need not prove consideration. *MFA Inc. v. Dettler*, 817 S.W.2d 658, 665–66[14–16] (Mo. App.1991). Failure of consideration is an

---

1. They are rescripted as *Appendix A* to the opinion.

2. The promissory note in issue recites:

"FOR VALUE RECEIVED, the undersigned JERRY D. HARL and SHARON E. HARL, husband and wife, jointly and severally, promise and agree to pay to TERRY D. GIBSON and MARY SUE GIBSON, husband and wife, the principal sum of Eighty Thousand Dollars ($80,-000.00), together with interest thereon at the rate of Ten and One-Half Percent (10 1/2%) per annum, with such principal and interest payable initially in equal monthly installments of Seven Hundred Thirty-Two Dollars ($732.00) per month with the first such monthly payment due

and payable on the 28th day of January, 1985, and a like payment on the 28th day of each consecutive month thereafter until the 28th day of December, 1994, at which time all then remaining principal and interest shall be fully and finally due and payable. Makers shall have the privilege of prepayment without penalty at any time ..."

The writing, although signed by the maker and "contain[ing] an unconditional promise or order to pay a sum certain in money and no other promise ...," was not payable to order or bearer, and so was not a negotiable instrument within Article 3 of the Uniform Commercial Code. § 400.3-104(1).

affirmative defense, and the burden of proof is on the party who asserts it. *Commerce Bank of Joplin v. Shallenburger*, 766 S.W.2d 764, 768[2, 3] (Mo.App.1989). It is an issue not tendered for adjudication.

To the extent that conclusion of law 21 predisposed the judgment, the court was in error. The standing of the Gibsons to sue on the Harl promissory note, in any event, did not depend upon the validity of the assignment from the Bank, or upon an assignment at all. It was the evidence, acknowledged by the parties and found by the court, that the plaintiffs Gibson were guarantors of the second loan to the third-party defendants Gibson. It was as additional collateral to secure the second loan that the third-party defendants Gibson pledged the note from the Harls. It was as guarantors of the second loan that the Bank sued the plaintiffs Gibson on the obligation of the third-party defendant Gibson, and it was as guarantors that the plaintiffs Gibson paid the $95,199.67 to the Bank. This was the full and exact balance owed on the note principal, interest and legal fees.

Where a guarantor pays the debt of the principal debtor the law implies a promise of reimbursement, and the action is based upon equitable principles. *In re Jamison's Estate*, 202 S.W.2d 879, 883[2, 3] (Mo.1947). The recovery by the guarantor is based on the doctrine of equity against unjust enrichment, and not on contractual relationship. It does not need the consent of the principal, but equity enforces the right to reimbursement by subrogation. *Id.* Thus, a guarantor who pays the debt or judgment of another, "at least as against the debtor primarily liable, [is] subrogated to all the rights and remedies of the creditor, *and this even without formal assignment of the debt or judgment.*" [em-

phasis added]. *Phelps v. Scott*, 325 Mo. 711, 30 S.W.2d 71, 75[5] (1930); *First State Bank v. Reorganized School Dist. R–3 Bunker*, 495 S.W.2d 471, 484–85[11, 12] (Mo.App.1973).

The equity of subrogation attaches immediately and to the extent necessary to effect reimbursement to all rights, remedies and securities which were available to the creditor to obtain payment from the person or property of the one who, as to the guarantor, is primarily liable for the debt. *In re Jamison's Estate*, 202 S.W.2d at 883[4–6]; 83 C.J.S. *Subrogation* § 47(a) (1953). The equitable assignment of the debt that accrues to a guarantor extends to any collateral security held by the creditor as to the debt. Thus, one secondarily liable who is required to pay a note secured by collateral acquires title to the note, which is not discharged by the payment, and becomes owner of the collateral. 38 AM. JUR.2d *Guaranty* § 127, n. 20 (1968).

On principle, therefore, the right to the collateral pledged to the bank the Harl promissory note and deed of trust and to sue to enforce that security did not depend upon a formal assignment of the note, nor whether "value" was given, nor any other condition of contract law. In equity, the plaintiffs Gibson as guarantors became owners of the collateral immediately, and by operation of law, upon payment of the debt of the principals [third-party defendants Gibson] to the extent necessary to obtain reimbursement. *Phelps v. Scott*, 325 Mo. 711, 30 S.W.2d at 76; J. ELDER, THE LAW OF SURETYSHIP § 11.4 (5th ed. 1972).

The conclusions of law notwithstanding, the standing of the plaintiffs Gibson [in the stead of the Bank] to sue on the pledged collateral is not in question.[3] What rights

3. To reinforce the conclusions of law that the plaintiffs Gibson did not pay value for the transfer of the Harl note and so were not holders and assignees entitled to payment, the defendants Harl argue that, in any event, the plaintiffs Gibson did not produce the original Harl note at the trial, and so did not prove a prima facie case, since only a "holder" of a promissory note may enforce payment on it. The Harls cite provisions from the U.C.C. as well as case deci-

sions, among them, *Union Savings Bank v. Cassing*, 691 S.W.2d 513 (Mo.App.1985). *Cassing* holds "[w]here a note is sued on is in the possession of the plaintiff, he must produce it because it is the best evidence." *Id.* at 515. *Cassing* also explains, "there can be no recovery on a note which is not introduced in evidence if its absence is not explained as a foundation for proof of its contents." *Id.* Here, the parties stipulated that the exhibit was a "true, accurate, authentic

the pledgee Bank had, and hence the guarantors Gibson as subrogees [or formal assignees] of the Bank, as against the Harls on the pledged promissory note, remains for determination. *See Kaw Valley State Bank & Trust v. Commercial Bank of Liberty,* 567 S.W.2d 710, 712[4] (Mo.App. 1978); *Centerre Bank of Branson v. Campbell,* 744 S.W.2d at 495[6].

The plaintiffs Gibson argue that Conclusions of Law 14, 15, 16 and 26 entered by the trial court in support of the judgment were also erroneous. In composite, those propositions adjudicate that the Lease Rescission Agreement executed by the Harls and the third-party defendants Gibson in 1987 worked a full payment of the note by the Harls, so that no money was due from the Harls under the note to any party. They posit also that the Lease Rescission Agreement worked an accord and satisfaction as to the note so that the Harls were released from any further liability under the note, and that since there remained no liability under the note, the deed of trust securing the note was canceled and did not constitute a lien against the real estate.[4]

The plaintiffs Gibson argue that these conclusions of law contradict the clear language of the Lease Rescission Agreement, and are therefore erroneously derived. They argue that the agreement "clearly on its face contains no language that can be read to cancel the Note." On the contrary [the argument continues], the term of the agreement that the third-party defendants authorized the Harls "upon obtaining possession of that note, to mark it paid in full," not only contradicts an intention to cancel the note, but also compels the conclusion of law that the agreement of the third-party pledgors-assignors "could not possibly relieve [the makers Harl] of any obligations under the Note because [they] no longer owned the Note." The plaintiffs Gibson reason to the conclusion that "the Bank was the holder of the Note, [and only the] Bank had the authority to receive payment." Moreover, the "Agreement to Rescind did nothing to affect the right of that Bank to collect any unpaid balance on the Note (if the Third–Party Defendant had defaulted)."

The judgment does not rest on legal conclusions that the Agreement to Rescind Lease canceled the note, but that the signatories thereby effected a full payment by the Harls of the note and an accord and satisfaction as to their obligations under the note to anyone. It is manifest that the court understood the cancellation terminology of the Lease Rescission Agreement to mean a mutual cancellation of obligations, the rescission of the lease in exchange for the "release from any liability whatsoever under the Note." The conclusions of law express that the effect of the Lease Rescission agreement was: "the Note was paid in full" and "an accord and satisfaction with respect to the note."

There were before the court the repeated affirmations of the third-party defendant Terry Gibson that by the execution of the Lease Rescission Agreement he intended to "cancel the Harl note" in exchange for cancellation of the lease. There was before the court also the offer of proof by Harl [improperly excluded] that "the intent of the agreement was" that the third-party defendants Gibson cancel the note and that the Harls cancel the lease.

 The argument of the plaintiffs Gibson mistakenly invokes the parol evidence rule to exclude the testimony of the parties concerning the writing. The parol

and admissible copy of the Note." The same stipulation agreed that on January 29, 1988, the "Bank assigned the Note to the Plaintiffs." The stipulation both "explained" the absence of the note and proved, as well, the "foundation for proof of [the note's] contents." *Id.* The contention is denied. The trial court expressly found as a fact, "The original Note was not offered or admitted into evidence at the trial of this cause," but gave it no legal significance.

4. In argument, the plaintiffs Gibson also implicitly impugn cognate Conclusions of Law 17, 18 and 19. These conclusions posit as legal propositions that: the Bank consented to the execution of the Lease Rescission Agreement, the Bank consented to the payment of the note which the agreement effected and that, although the Bank possessed the note as of March 31, 1987, when the agreement was executed, "the Note could be fully paid and was fully paid by the Harls with the consent of the [Bank]."

evidence rule as a principle of substantive law prohibits the *contradiction* of integrated contracts. *Wulfing v. Kansas City Southern Indus. Inc.*, 842 S.W.2d 133, 146[6] (Mo.App.1992). It simply does not apply to parol testimony that does not contradict the certain terms of an integrated agreement. None of the testimony of that tenor, redundantly tendered throughout the trial, contradicted any term of the Lease Rescission Agreement. That evidence, rather, went to confirm the express fundamental assumption of the undertaking: "WHEREAS, the parties are desirous of rescinding the lease and canceling the promissory note: IT IS NOW THEREFORE IN CONSIDERATION OF THE FOLLOWING MUTUAL COVENANTS AND AGREEMENTS THAT ..." Even a complete and integrated contract must be interpreted. Admission of oral testimony of agreements or negotiations contemporaneous with the execution of the written agreement are admissible to establish the meaning of the contract. *Rufkahr Constr. Co. v. Weber*, 658 S.W.2d 489, 497[8, 9] (Mo.App.1983); CORBIN ON CONTRACTS § 579 (1960); RESTATEMENT (SECOND) CONTRACTS § 214 comments a–c (1981).

An unmistakable premise of that mutual undertaking was an agreement for payment of the Harls' note based upon the exercise by the Harls of their right to set off the larger monetary obligations owed them by the third-party defendants Gibson under the lease. The Lease Rescission Agreement is the embodiment of an exercised right of setoff expressed as "payment" and, however incongruously, as "accord and satisfaction."

■■■■ Setoff is founded on mutual indebtedness and the demands must be due between the same parties in the same capacity. *Buchweiser v. Estate of Laberer*, 695 S.W.2d 125, 129 (Mo. banc 1985). This is so because the allowance of setoff is "payment *pro tanto* then and there of

plaintiff's demand." *Sturdivant Bank v. Stoddard County*, 332 Mo. 568, 58 S.W.2d 702, 704 (banc 1933). Accord and satisfaction, on the other hand, is an agreement for settlement of some previously existing claim by substituted performance, and the actual performance of this agreement. *Edgewater Health Care, Inc. v. Health Sys. Management, Inc.*, 752 S.W.2d 860, 868[14–17] (Mo.App.1988). Either a bona fide dispute or an unliquidated claim will support an accord and satisfaction. *Id.* While setoff relates to mutual debts due, accord and satisfaction is a matter of contract. While setoff is a matter of right and statute, accord and satisfaction rests on agreement and consideration. *Sturdivant Bank v. Stoddard County*, 58 S.W.2d at 703[1–3]; § 509.420; 20 AM.JUR.2d *Counterclaim, Recoupment, Etc.* § 7 (1965); *Curtis v. Indemnity Co. of America*, 327 Mo. 350, 37 S.W.2d 616, 624[6, 7] (1931).

■■■ The evidence proves, and the findings and conclusions of law adjudicate,[5] that the Harls satisfied their debt on the note to the third-party defendants Gibson by the exercise of their right to set off the obligations the debt owed them by the Gibsons under the lease. That indebtedness, as the Gibsons acknowledged, exceeded the obligation of the Harls under the note. The conclusions of law also adjudicate[6] that the performance under the Lease Rescission Agreement constituted an accord and satisfaction and "full payment by the Harls of the Note." It is a premise of law both superfluous and incongruous. It is superfluous because the full indebtedness on the note was already offset by the accrued indebtedness of the Gibsons under the lease and so, as to the Gibsons, their interest in the note was discharged. It was incongruous because there was no consideration for the accord and satisfaction of the note, and that original demand was already satisfied and extinguished.[7] *Otten*

5. Appendix A, Conclusions of Law 9, 11, 13 and 14.

6. Appendix A, Conclusions of Law 15 and 16.

7. The validity of the Lease Rescission Agreement is not in issue, nor the sufficiency as

consideration of the mutual covenants to rescind the lease and deliver possession of the premises. It is evident that the Harls, whose right of setoff at the execution of the Lease Rescission Agreement exceeded the original debt owed on the note, relinquished a judgment

*v. Otten*, 632 S.W.2d 45, 48[2, 3] (Mo.App. 1982); *Aldridge v. Shelton's Estate*, 86 S.W.2d 395, 399[14–16] (Mo.App.1935).

 A party is discharged from liability on a note by payment as well as by cancellation. *Household Fin. Co., v. Watson*, 522 S.W.2d 111, 116[9–11] (Mo.App. 1975); § 400.3–601, RSMo 1986. Payment may be by money, or some other valuable thing which is accepted by the creditor as the equivalent of a specific sum of money. *Allmon v. Allmon*, 306 S.W.2d 651, 655[5] (Mo.App.1957). So also, where the parties agree, payments on a promissory note may be made by a method other than money. The cancellation of mutual indebtedness is such a method. *Miller v. Jones*, 635 S.W.2d 360, 362, n. 3 (Mo.App.1982). Thus [the question of the rights of the pledgee Bank apart], whether by cancellation or payment, the Harls were discharged from liability to the third-party defendants Gibson under the note.

The conclusion of law, and the consequent argument of the defendants Harl, that the Lease Rescission Agreement worked a cancellation of the note "released [the Harls] from any further liability whatsoever under the Note" rests on another legal assumption, that "the Bank consented to the payment of the Note which was effected by the execution of the Lease Rescission Agreement." That the Bank as pledgee had presumptive rights in the Harl note, the pledged property, was acknowledged by the parties to the Lease Rescission Agreement as well as by the court.[8]

 It is nevertheless disingenuous to argue that the absence in the agreement that the Gibsons "immediately mark the note 'paid'" negates any purpose to cancel the paper. The Agreement to Rescind Lease acknowledges that the Gibsons had by then pledged the note to the Bank. It is the very essence of a pledge transaction that the possession of the pledged property be transferred to the pledgee. *Storts v. Mills*, 93 Mo.App. 201, 208 (1902). The third-party defendants Gibson could not make a valid pledge of the promissory note, of course, without delivery of possession of that collateral security to the pledgee. *Tennent v. Union Cent. Life Ins. Co.*, 133 Mo.App. 345, 112 S.W. 754, 759[13] (1908); *Kaw Valley State Bank & Trust v. Commercial Bank of Liberty*, 567 S.W.2d at 712[4]. Nor does the circumstance that the Bank was the holder of the note, and that the agreement "did nothing to affect the right of that Bank to collect any unpaid balance on the Note," impair the right of the third-party defendants Gibson to come to an accommodation with the Harls as to their obligation under the note pledged to the Bank.

 The function of a pledge is to secure indebtedness or other engagement and, on default, implies the power of sale in the pledgee of the property pledged. *Tennent v. Union Cent. Life Ins. Co.*, 112 S.W. at 759[13]. The general right of property in the collateral pledged remains in the pledgor, subject only to the lien of the indebtedness existing in favor of the pledgee. *Ottumwa Nat'l Bank v. Totten*, 114 Mo.App. 97, 89 S.W. 65, 67 (1905); 68 AM. JUR.2d *Secured Transactions* § 62 (1973). Cognately, subject to the rights of the pledgee, the pledgor may sell or assign his interest in the pledged property without delivery of the property to the assignee. *Murry v. Central Bank*, 226 Mo.App. 400, 40 S.W.2d 721, 724[7, 8] (Mo.App.1931); 72 C.J.S. *Pledges* § 43 (1951). That was the very property right the Gibsons, as pledgors of the promissory note to the Bank, exercised by the covenant in the agreement: "The Gibsons hereby transfer and assign to the Harls (subject to the rights, if any, of the Boone County National Bank)

---

for the excess. *See Edmonds v. Stratton*, 457 S.W.2d 228, 231–32[4–9] (Mo.App.1970).

**8.** The assignment by the Gibsons of the Harls note to the Harls, their *quid pro quo* for the accord and satisfaction of their liability under the lease with the Harls, was expressly "subject to the rights, if any, of the Boone County Na- tional Bank." Conclusion of Law 12 entered by the trial court in support of the judgment re- cites: "As of March 31, 1987, the only parties with any rights in the Note or any claim of ownership of the Note were the Third–Party Defendants and the Boone County National Bank."

the promissory note [executed by the Harls and pledged to the Bank]." Thus, contrary to argument, the validity of the assignment of the Harl note by the third-party defendants Gibson did not depend upon the consent of the pledgee Bank, but was a matter of right in property.[9]

It is not the legitimacy of the assignment by the third-party defendants Gibson, as pledgors of the note, of their general property in the note to the Harls that is in issue, but what that interest was. That is because the claim of the plaintiffs Gibson on the Harl note is as subrogees of the pledgee Bank. As such subrogees, the plaintiffs Gibson stand in the stead of the pledgee Bank with respect to the pledged property, and are entitled to enforce the security held by the pledgee Bank against the principal debtors [third-party defendants Gibson] to the same extent as could the Bank. *Phelps v. Scott*, 325 Mo. 711, 30 S.W.2d at 75[5]. The interest of the Bank in the note as pledgee of that collateral was no greater than that of the pledgors third-party defendants Gibson. *Id.; Kaw Valley State Bank & Trust v. Commercial Bank of Liberty*, 567 S.W.2d at 712[5, 6]; 68 C.J.S. *Secured Transactions* § 50 (1973).

It is given as the rule that the assignee of the pledgor's interest succeeds to all of the pledgor's rights in the property, *at least where the pledgee has notice of the assignment.*[10] 72 C.J.S. *Pledges* § 45 comment b (1951). It is a related, and antecedent, rule that the pledgor sells or assigns any interest in the property *subject to the rights of the pledgee. Murry v. Central Bank*, 40 S.W.2d at 724[7, 8]. Thus, the assignment in the Lease Rescission Agreement of the Harl note to the defendants Harl by the pledgors third-party defendants Gibson could only transfer whatever interest the pledgors had in the note, subject nevertheless to the rights of the pledgee.

In order to recover, therefore, the plaintiffs Gibson were bound to prove a subsistent interest by the third-party defendants Gibson in the Harl note still subject to the rights of the pledgee Bank, and hence, to judgment and execution, at the time the plaintiffs Gibson, as guarantors, discharged the third-party defendants Gibson's obligation to the Bank.

It is only a special property that a pledge vests in the pledgee. That special property is the lien of the pledgee on the pledged property measured by the amount of the debt that is secured by the collateral. *Ottumwa Nat'l Bank v. Totten*, 89 S.W. at 67; *Tennent v. Union Cent. Life Ins. Co.*, 112 S.W. at 761; 68

9. The right of general property by the pledgor in the property pledges is such that the pledgee is under duty to return the collateral to the pledgor on payment of the principal debt. *Russell v. Empire Storage & Ice Co.*, 332 Mo. 707, 59 S.W.2d 1061, 1067[2] (1933); 72 C.J.S. *Pledges* § 48 (1951). Where, as here, the principal debt is discharged by the guarantors, in equity, the guarantors [plaintiffs Gibson] became owners of the collateral [the Harls note] immediately to the extent necessary to obtain reimbursement. *Phelps v. Scott*, 325 Mo. 711, 30 S.W.2d at 75[6]. They remain entitled to retain possession of the Harls note as owners of the collateral, and to the extent necessary for reimbursement, to assert any rights that the creditor [Bank] may have against the debtor [third-party defendants Gibson] in the property. *In re Jamison's Estate*, 202 S.W.2d at 883[4–6].

The plaintiffs Gibson, however, own the Harls note not as assignees of the Bank, as their petition pleads, but as a subrogees in equity as already expounded. A pledge does not acquire an interest in the property, except as a security for the debt. 68 AM.JUR.2d *Secured Transac-*

*tions* § 62 (1973). Thus, the interest of the Bank for any purpose in the property given in pledge [the Harl note] was extinguished by the full payment of the principal debt that the note secured. Thereafter, but for the supervention of equity in favor of the guarantors, the Bank would have been legally bound to restore the collateral security to the pledgors.

10. The trial court found as fact that the pledgee Bank was sent a copy of the proposed Lease Rescission Agreement and became aware of its contents prior to its execution by the principals. A term of that agreement was the assignment by pledgors Gibson of to the Harls of the Harl note, the property pledged to the Bank. The court found as fact, as well, that the Bank "consented to the Lease Rescission Agreement and the transactions contemplated therein." There is no dispute that the pledgee Bank had actual knowledge of the proposed assignment of the pledged property, the Harl note, from the pledgors Gibson to the Harls, and of the other terms of the agreement prior to their execution. The writing was also recorded in Boone County.

AM.JUR.2d *Secured Transactions* § 62 (1973). The collateral continues to be charged with the lien as long as the debt that the pledge secures remains unpaid, unless changed by subsequent contract or conduct of the parties. *Hathaway v. Helmkamp*, 427 S.W.2d 455, 460[6] (Mo. 1968).

The rights of the pledgee Bank in the pledged promissory note were to have the payments by the Harls go to the credit of the principal debt, the debt evidenced by the promissory note signed by third-party defendants Gibson for the second loan from the Bank, until the principal debt was paid.[11] In practice, the Bank did not exercise that right, nor even notify the obligors Harl of the pledge of the note, or instruct them that payment was to be made to the Bank as pledgee of that property. The Bank, rather, authorized the pledgors Gibson to receive payments on the note, but without directions that they "turn them over to the Bank." Nor did the Bank inform the Harls, obligors on the note, of the pledge. Thus, from January 10, 1986, until the Lease Rescission Agreement was negotiated in March 1987, the Harls never knew or were informed that the promissory note they had executed to the third-party defendants Gibson on December 28, 1984, was pledged to the Bank.

The trial court did not consider, nor do we determine, whether the conduct of the Bank as to the debt that the pledge was given to secure was such as to constitute a waiver, estoppel or other discontinuance, of the lien of the pledge. *See Hathaway v. Helmkamp*, 427 S.W.2d at 460[6]; 68 AM. JUR.2d *Secured Transactions* § 62 (1973). However, the trial court did consider, find as fact, and conclude as a matter of law, that the Bank consented to the execution of the Lease Rescission Agreement and that the note was fully paid by the Harls with the consent of the Bank, although the Bank possessed the note. These conclusions of law rest on findings that the Bank was made aware of the details of the proposed transaction from a draft copy of the agreement prior to its execution, and that the agreement would accomplish a payment of the Harl note in full. The failure of the Bank to object and to instruct the third-party defendants Gibson not to enter into the agreement, the court concluded, constituted the consent of the Bank to the mutual cancellations as payment in full of the note, even as to its interest.

The plaintiffs Gibson argue that the failure of the Bank to object to an agreement that expressly preserved the Bank's rights to the Harl note cannot constitute consent to payment of that note. The refusal of the Bank to return the note to the Harls, the plaintiffs Gibson insist, is even more compelling against the fact of consent.

Whatever the validity of consent of the Bank as the theory of judgment, the exercise of the right of setoff among the mutual agreements in the Lease Rescission Agreement effectively released, *inter sese*, the defendants Harl from their obligation on the note to the third-party defendants Gibson. The question persists, nevertheless, as to what interest in the Harl note remained thereafter to the Bank and hence to the subrogees-plaintiffs Gibson. Or, restated in terms of pledge, what was the special property in the Harl note over which the lien of the Bank as pledgee extended after the exercise of setoff by the Harls and the mutual cancellation of the obligations under the lease and note by the Lease Rescission Agreement?

The interest of the pledgee in the collateral is, to the extent of the pledgor's indebtedness, identical with that of the pledgor. *Kaw Valley State Bank & Trust v. Commercial Bank of Liberty*, 567 S.W.2d at 712[5, 6]. Accordingly, the pledgee of a nonnegotiable promissory note takes the paper subject to all defenses which the maker may have against the note prior to notice of the pledge. *Id.* at 713[7]. Since the transferee of a nonnegotiable promissory note acquires no right superior to those held by the transferor, the pledgee

---

11. Coincidentally, the promissory note for the second debt and the promissory note in pledge, the Harl note, were in the same principal amount $80,000.00. Thus, virtually, the pledge was collateral security for the entire principal debt.

is subject to any setoff available to the obligor on the note against the pledgor. *Id.; Illinois State Bank v. Yates*, 678 S.W.2d 819, 824[5] (Mo.App.1984); § 509.- 480; RESTATEMENT (SECOND) OF CONTRACTS § 336 (1981).

On December 28, 1984, the Harls executed their promissory note in the principal amount of $80,000 to the third-party defendants Gibson. In latter 1985, the Gibsons offered to sell the Harl note to the Bank, but the Bank refused because the paper was nonnegotiable, and thus subject to all the defenses of the Harls to the note. On January 10, 1986, the third-party defendants Gibson pledged the Harl note to the Bank as collateral security for an $80,000 loan. The Bank never informed the Harls of the pledge and transfer of the note to the Bank. In March 1987, the Lease Rescission Agreement was drafted and then executed. It was then, for the first time, that the Harls found out about the pledge of the note to the Bank. The court found as facts: (1) the third-party defendants Gibson and Granny's Fried Chicken, Inc., were then indebted to the Harls for delinquencies in rent and other charges under the lease in the sum of $106,339.03; and, (2) that amount exceeded the sum of the principal balance and the accrued interest due from the Harls to the third-party defendants Gibson under the note.

Under the proof, therefore, the right of the Harls to set off in full their obligation under the note to the third-party defendants Gibson against the obligation owed the Harls under the lease by the third-party defendants Gibson had accrued by the time the Harls first learned of the pledge of the note to the Bank in March 1987. Section 509.480; *Eastern Atl. Transp. & Mechanical Eng'g Inc. v. Dingman*, 727 S.W.2d 418, 421 (Mo.App.1987). The Lease Rescission Agreement was the instrument of setoff, and the judgment under review was its adjudication. Section 509.480; *Kaw Valley State Bank & Trust v. Commercial Bank of Liberty*, 567 S.W.2d at 714; *Illinois State Bank v. Yates*, 678 S.W.2d at 825.

The defendants Harl's right of setoff was prior to any rights of the Bank arising from the pledge of the note, and hence of the plaintiffs Gibson, who claim as subrogees of the Bank. The setoff exercised by the Harls exceeded the obligation owed by them on the note made payable to the third-party defendants Gibson, and thereby extinguished that obligation as well as the lien of the pledge. There remained no indebtedness subject to the lien of the pledge, hence no interest in the note that the Bank could enforce, and no equity of subrogation to which the guarantors Gibson could succeed. Accordingly, the Harls, as assignees of the note under the mutual releases in the Lease Rescission Agreement, were entitled to its possession as well as ownership, and that the deed of trust that secured the note be canceled.

The trial court came to the proper judgment, and that judgment is affirmed.

The plaintiffs Gibson insist nevertheless that the judgment of the trial court was erroneous because setoff, "the only defense the defendants [Harl] can now raise," derives from claims that have been released, and therefore is extinguished. The mutual covenants of the Lease Rescission Agreement provided, among other terms, that the lease was rescinded and the parties excused from further obligation to perform its terms. "In addition, the Harls waive any claim they have against Shorty's and the Gibsons for rent due and unpaid as of this date." The release of the claim for any delinquency of the third-party defendants Gibson under the lease that accrued prior to March 31, 1987, the plaintiffs Gibson argue, extinguished the claim, and with it, the setoff defense by the Harls to the obligation under the note. The plaintiffs argue that thus bereft of the "only defense" the Harls "can now raise," they are open to judgment on the note.

The plaintiffs Gibson sued the Harls as assignees of the Bank and owners of the note. The answer to the petition of the Harls pleads affirmative defenses, among them, estoppel, waiver, accord and satisfaction, payment and setoff. The conclusions of law that sustain the judgment determine

that the setoff defense was proven, and that as of the date of the Lease Rescission Agreement, the Harls were entitled to set off their full indebtedness to the third-party defendants Gibson on the note by the amounts owed them by the Gibsons on the lease. The conclusions of law determine also that the defense of accord and satisfaction was also proven by the Lease Rescission Agreement, with the effect that the note was paid in full and the Harls were "released from any further liability whatsoever under the Note." That is to say, the defense of payment was also proven.

■ The adjudication of setoff aside, the Bank was aware that the claim of the Harls to set off their indebtedness to the Gibsons on the note against the indebtedness of the Gibsons on the lease was the grounding for cancellation of the Harls note proposed by the Lease Rescission Agreement. The Bank knew from the terms of the agreement, then still under discussion, that the Gibsons were to transfer and assign to the Harls their rights in the Harl note. In fact, the Bank was requested to relinquish the note for it to be marked "paid in full" upon the execution of the agreement, but the Bank refused. It is inferable from the evidence that the Harls did not learn that their note was pledged to the Bank until after the Bank learned of an agreement between the pledgors Gibson and the defendants Harl to satisfy and release the note, whether as accord and satisfaction, setoff or payment. Accordingly, the Bank took the note in pledge subject to those defenses as well as the defense of setoff. The setoff, accord and satisfaction and payment operated, at least, to release all claims, rights of and interest of the pledgors third-party defendants Gibson in the Harl note. The interest of the pledgee Bank was no greater than that of the pledgor Gibsons, nor that of the subrogees-plaintiffs Gibson than that of the pledgee Bank.

The judgment is affirmed.

All Concur.

## APPENDIX A
### CONCLUSIONS OF LAW

1. This Court has jurisdiction and venue over this cause. Section 508.010 RSMo.

2. The Note is not payable to order or to bearer and, therefore, the Note is not a negotiable instrument because it lacks the essential requisites of negotiability. Section 400.3–104 RSMo; Section 400.3–111 RSMo.

3. Because the Note is not a negotiable instrument, there can never be a holder in due course of the Note, and neither the Plaintiffs nor the Boone County National Bank are or ever were holders in due course of the Note. Section 400.3–805 RSMo; *Illinois State Bank of Quincy v. Yates,* 678 S.W.2d 819 (Mo.App.1984).

4. Any holder of the Note takes the Note subject to all defenses which the Harls at the time of and prior to notice of the assignment of the Note to the holder. [sic]. Section 509.480 RSMo.

5. The Note, the Lease, and the Real Estate Contract were all components parts of one integrated transaction and must, therefore, be construed together. Section 400.3–119 RSMo; *Williams v. Kessler,* 295 S.W. 482 (Mo.App.1927).

6. The Boone County National Bank at all times possessed the Note as a pledgee thereof.

7. W. Michael Stroupe was at all times relevant herein an agent of Boone County National Bank with full power to bind Boone County National Bank, and all knowledge possessed by W. Michael Stroupe was imputed to the Boone County National Bank. *Thomason v. Miller,* 555 S.W.2d 685 (Mo.App.1977); *Prior v. Hager,* 440 S.W.2d 167 (Mo.App.1969).

8. The Note was not assigned in full to the Boone County National Bank, and the Boone County National Bank was not at any time a holder in due course thereof. Section 400.3–805 RSMo.; *Illinois State Bank of Quincy v. Yates,* 678 S.W.2d 819 (Mo.App.1984).

9. On March 31, 1987, the Third–Party Defendants and Granny's Fried Chicken,

Inc. were indebted to the Harls for delinquencies in rent and other charges under the Lease in the amount of $106,339.03, which amount the Harls were entitled to set off as of March 31, 1987 against any amounts they may have owed pursuant to the Note. Section 509.480 RSMo.

10. The earliest date on which the Harls received any notice whatsoever that the Note had been pledged to the Boone County National Bank by the Third–Party Defendants was March 31, 1987.

11. As of the date of notice of the pledge of the Note was given to the Harls, the set off possessed by the Harls was in the amount of $106,339.03, and the holder of the Note as of that date was subject to said set off. Section 509.480 RSMo.

12. As of March 31, 1987, the only parties with any rights in the Note or any claim of ownership of the Note were the Third–Party Defendants and the Boone County National Bank.

13. The amount that the Harls were owed by Granny's Fried Chicken, Inc. and by the Third–Party Defendants pursuant to the Lease as of March 31, 1987 exceeded the amount of the principal balance and the accrued interest due from the Harls under the Note as of said date. Section 509.480 RSMo.

14. The Lease Rescission Agreement which was executed by the Harls and the Third–Party Defendants effected a full payment by the Harls of the Note. By virtue of the Lease Rescission Agreement, the Note was paid in full and, therefore, the Note is not now collectible and no sums are due pursuant to the Note from the Harls to any party. *Allmon v. Allmon*, 306 S.W.2d 651 (Mo.App.1957); *Miller v. Jones*, 635 S.W.2d 370 [360] (Mo.App.1982).

15. The Lease Rescission Agreement effected an accord and satisfaction with respect to the Note. *Curd v. Cantrell*, 597 S.W.2d 226 (Mo.App.1980); *Nutrena Mills, Inc. v. Greer*, 114 F.Supp. 156 (W.D.Mo. 1953).

16. Because the Lease Rescission Agreement effected a payment of the Note and an accord and satisfaction with respect to the Note, the Harls were, by virtue of the Lease Rescission Agreement, released from any further liability whatsoever under the Note. Section 400.3–601 RSMo.; Section 400.3–603 RSMo.; *Nutrena Mills, Inc. v. Greer*, 114 F.Supp. 156 (W.D.Mo. 1953).

17. The Boone County National Bank consented to the execution of the Lease Rescission Agreement by the various parties thereto.

18. The Boone County National Bank consented to the payment of the Note which was effected by the execution of the Lease Rescission Agreement. Section 400.3–603 RSMo.

19. Although Boone County National Bank possessed the Note as of March 31, 1987, the Note could be fully paid and was fully paid by the Harls with the consent of the Boone County National Bank. Section 400.3–603 RSMo.

20. The Third–Party Defendants had the full right to accept and receive full payment of the Note as of the date of the execution of the Lease Rescission Agreement. *Illinois State Bank of Quincy v. Yates*, 678 S.W.2d 819 (Mo.App.1984); *State ex rel. Hansen v. McKay* [31 Or.App. 631], 571 P.2d 166 (1977); *Boulevard National Bank of Miami v. Air Metal Industries, Inc.*, 176 So.2d 94 (Fl.1965).

21. The Plaintiffs did not pay value to acquire the Note, but rather the transfer of the Note to the Plaintiffs from the Boone County National Bank was made without consideration. Section 400.3–303 RSMo.

22. As of November 9, 1987, and at all times thereafter, the Plaintiffs were represented by Thomas H. Rost, and he was their agent and all knowledge possessed by him was imputed to the Plaintiffs. *Thomason v. Miller*, 555 S.W.2d 685 (Mo.App. 1977).

23. The Plaintiffs took the Note with the full knowledge of all defenses claimed by the Harls, including the defenses of set off, payment and accord and satisfaction which had previously been asserted by the Defendants. Section 400.3–304 RSMo.

24. The Plaintiffs had constructive knowledge of the Lease Rescission Agreement and its contents by virtue of the fact that it was recorded in the Public Records of Boone County, Missouri. *First National Bank v. Johnson*, 297 S.W. 724 (Mo.App. 1927).

25. This case is suitable for a declaratory judgment pursuant to Rule 87.01 of the Missouri Rules of Civil Procedure.

26. Because the Note was paid and there exists no liability thereunder, the Deed of Trust securing the Note is canceled and does not constitute a lien against the Real Estate.

27. Because the Note was paid and the Defendants were released from liability thereunder, and because the Defendants owe no sums to the Plaintiffs, the Defendants' claims against the Third–Party Defendants are moot.